[L. A. No. 16169.   In Bank.—February 14, 1940.]

JESSIE BERYL PORTER, Respondent, v. HARRY G. VAN
DENBURGH, as Administrator, etc., Appellant.

Oscar S. Elvrum and Girard F. Baker for Appellant.

Kelby, Lawson & Garroway for Respondent.

SHENK, J.—The plaintiff filed an action to impress a trust on certain personal property and for an accounting. Judgment was rendered in her favor to the effect that she was the owner of and entitled to have issued to her, as successor in interest of her husband, L. E. Porter, 60,939½ shares of the capital stock of Tungsten Reef Mines Company. The defendant appealed.

The question for determination is whether the evidence supports the findings and the judgment. There is practically no conflict in the evidence. The controversy centers mainly on the interpretation of an instrument relied upon in part by the plaintiff as the basis of her cause of action. Briefly, the following facts appear:

In 1916, L. E. Porter obtained an option from W. P. Yaney on the purchase of 18 tungsten properties in Inyo County, California, for a price of $30,000. The properties were in two groups, known as the Noble group and the Aeroplane group. The purchase prices of the groups were designated as $7,000 and $23,000, respectively. The Noble group was resold by A. J. Clark for $60,000. Book accounts of Clark received in evidence disclosed that a division was effected between the two men of an amount representing the original purchase price of the claims and that a balance was reserved for investment in an account designated as the Standard Tungsten Account kept by Clark. The Aeroplane and other groups of claims were transferred to Standard Tungsten Company, Nevada corporation formed about the same time, and two certificates of its capital stock, representing 55,000 shares each, were issued in the name of A. J. Clark. Advances to the extent of $45,000 were made to that company from the Standard Tungsten Account. Advances also were made to the company by persons named Fraser and Abercrombie. A cash dividend of 7½ cents a share on the issued stock

was paid to Clark and was divided equally with Porter. The record indicates that because of Porter's financial difficulties the ownership of the stock was retained in Clark's name.

The affairs of the Standard Tungsten Company did not progress satisfactorily, and its operations were discontinued. Its equipment was sold and its assets distributed. The amount realized was not sufficient to reimburse Fraser and Abercrombie fully for their investments after advances to the Standard Tungsten Account were repaid. Tungsten Reef Mines Company was then formed in June, 1918. Its entire capital stock consisting of 400,000 shares was issued in the name of Clark. The property of that company consisted of certain mining claims in Arizona, the option or down payment of which was paid for out of the Standard Tungsten Account. In 1921 the balance of the Fraser and Abercrombie obligations was satisfied by payment of cash and the transfer of a portion of the stock of the new company. A large portion of the stock of the company was held as treasury stock and sold to investors, until finally and at the time of Clark's death 121,879 shares only remained in his name.

In the meantime and on September 5, 1919, A. J. Clark signed and delivered to L. E. Porter an instrument in the following words: "This is to certify that L. E. Porter is entitled to one-half of the profits that come to me from my stock interest in the Tungsten Reef Mines Co., after all salaries, expenses of very kind have been paid, subject to any contract or agreements made by me prior to this date or any contract or agreements that I may hereafter make. It is understood and agreed that this agreement is not assignable."

L. E. Porter died in 1921 and Clark followed him in 1927. In June, 1934, Clark's widow passed away. The present action was brought in November, 1934, by the surviving widow of L. E. Porter against the administrator of the estate of Mrs. Clark.

The trial court found that Clark and Porter were copartners as to all of the foregoing transactions, and that Clark held the ownership of one-half of the shares last referred to in trust for the use and benefit of Porter. It found that Clark executed and delivered the quoted instrument as evidence of such ownership and trust; that said agreement or understanding subsisted during their lifetimes, unchanged and unmodified, and that the plaintiff was the present owner thereof;

that after Porter's death both Clark and Mrs. Clark recognized the plaintiff as the successor to her husband's interest and consulted and reported to her concerning the operation and management of the mining property and of the corporation; that all contracts and agreements to which said stock had been subjected had been discharged and that said stock was not subject to any contract or agreement except the claim of the plaintiff to the extent of one-half thereof. The court also found and concluded that the plaintiff was not guilty of laches in asserting her right to a one-half ownership of said stock. It entered judgment that the plaintiff was entitled to one-half of the shares.

■ On the appeal the defendant contends that, assuming she was entitled to something, the plaintiff was entitled only to "profits" from the stock and was not entitled to any of the stock itself. However, the ambiguity inherent in the word "profits", as used in the instrument relied upon by the plaintiff, justified the court in investigating all the surrounding facts and circumstances to ascertain what was meant by the word employed in the declaration signed by Clark. ■ "Profits" and "Dividends" may be considered to have entirely different concepts in relation to stock shares where, as here, mining ventures are involved and the entire purchase price of the property and stock is paid for out of profits realized from a prior venture. In such case the resulting acquisition is still "profits" in the minds of the co-venturers. That "profits" in this case referred to the stock itself is still further borne out by the fact that the stock was subjected to contracts and agreements of Clark, as for instance to the agreement to reimburse Fraser and Abercrombie for their advances to the Standard company. The foregoing and other facts appearing in the record, together with the peculiar wording of the declaration itself, amply support the trial court's conclusion that the interest of Porter was in the stock itself, and not alone in dividends to be derived therefrom.

■ The defendant also contends that the plaintiff's cause of action was barred by her failure to file a claim in the estate of A. J. Clark, and that the testimony of the plaintiff relating to the transactions involved was incompetent under the provisions of section 1880, subdivision 3, of the Code of Civil Procedure. These contentions are necessarily predicated upon the assumption that the plaintiff's right is based on a

claim against the estate as distinguished from a claim to ownership of the stock. Since the claim is not to any part of the estate but one of ownership, it follows that the defendant's additional argument that the cause of action is barred by the statute of limitations and that the plaintiff was not a competent witness to testify to matters or facts occurring prior to the death of the defendant's intestate cannot be sustained. (*Bollinger* v. *Wright,* 143 Cal. 292 [76 Pac. 1108] ; *Maguire* v. *Cunningham,* 64 Cal. App. 536 [222 Pac. 838].)

The defendant's contention that the plaintiff was guilty of laches as a matter of law finds no support in the record. The defendant argues that the doctrine of estoppel by laches is applicable in this case because both Porter and Clark and the latter's widow are now dead and their testimony is not available in defense of the plaintiff's claim. But the book accounts and the testimony of a witness who was secretary and treasurer of the corporations while Clark was alive, and who kept the accounts, furnish independent credible evidence in support of the findings and judgment.

There is likewise no merit in the contention that the plaintiff was estopped to claim ownership in the stock because neither the agreement nor the stock was listed as an asset of the estate of L. E. Porter until some time after the decree of distribution therein, at which later time a decree was entered distributing to the plaintiff the asset as after-discovered property. The elements of estoppel are not present. The failure of the plaintiff until a later date to list the property as an asset of the estate was not a representation to the Clarks, nor was it any statement upon which they were entitled to rely. Furthermore, the evidence shows possession by them of a copy of the agreement and also their understanding of its terms.

The foregoing disposes of all of the defendant's contentions. The judgment is affirmed.

Curtis, J., Gibson, J., Carter, J., Waste, C. J., and Edmonds, J., concurred.