[Civ. No. 16183. First Dist., Div. One. Oct. 13, 1955.]

JOHN L. POTTER, Respondent, v. MARGUERITE BLAND, as Executrix, etc., et al., Appellants.

McDougall & Fairfax for Appellants.

Crist, Peters & Donegan and John M. Donegan for Respondent.

BRAY, J.—In an action for quasi specific performance of a contract, allegedly a written one, judgment was entered decreeing that defendants held certain real property as constructive trustees for plaintiff's benefit, and ordering defendants to convey said property to plaintiff.

## Questions Presented

1. Was the memorandum sufficient under the statute of frauds?

2. Estoppel to assert the statute of frauds.

3. Was plaintiff incompetent to testify under the so-called "Deadman's Statute" (Code Civ. Proc., § 1880, subd. 3), and should a claim have been filed against the estate under section 707, Probate Code?

4. Statute of limitations.

5. Is equitable relief proper?

6. Is plaintiff entitled to more than half of the estate?

## Evidence

Plaintiff is the nephew of testatrix Sarah Williams. Defendant Suddeth is the sole beneficiary of her will.* Testatrix raised plaintiff from age 3 until he went out on his own. In 1932, plaintiff was living in Chicago but visited testatrix in Palo Alto. She suggested that they buy a house together but stated that she had no money. Plaintiff gave her $300 for the down payment. She then told plaintiff she would will the lot to him and his sister if he would help her with the purchase price. He agreed. The total purchase price was something like $2,700 or $3,000. Plaintiff made many

---

*Dated May 11, 1948. This will was contested by plaintiff in a prior proceeding in which he sought to prove the earlier will, dated August 14, 1944, hereafter discussed, in which he and his sister, Lillie Summers, were named sole and equal beneficiaries. Lillie died prior to the death of testatrix. He was unsuccessful. See *Estate of Williams*, 99 Cal.App. 2d 302 [221 P.2d 714].

of the payments on the house (the monthly payments were about $15.46) and frequently sent money to testatrix. Between 1932 and 1944 plaintiff gave more than $2,000 for the payments on the house. Testatrix lived in it (plaintiff never did), renting portions of it, the rent money being paid to her. Testatrix told plaintiff the house would be given to him and his sister by will. Plaintiff treated testatrix as his own mother and did everything he could in order to make her life comfortable. She was suffering with eye trouble and diabetes. She decided that since plaintiff had put so much money into the property she would deed it to him. This she did by gift deed dated May 3, 1944. Later that year she told plaintiff she wanted the property back in her name, saying, "I am going to leave it to you by will, anyway. What is the difference?" Testatrix told her minister that there had been a little misunderstanding "between the negotiation of the papers between" her and plaintiff and she wanted the minister to have her attorney get the property back in her name on her promise to make a will leaving it to plaintiff and his sister. She stated that plaintiff had helped in paying for the house. The minister then went to the attorney and informed him what testatrix had said. Testatrix signed a letter to the attorney, written for her by the minister, to the effect that she had not intended to give plaintiff control and possession of her property in her lifetime but intended it to go to him and his sister by will. She instructed him to "make out necessary papers to have it deeded back to me, and make out my will to them." The attorney wrote plaintiff stating that testatrix' minister had informed him that testatrix had not intended him to have control of the property but that she had understood that plaintiff was to fix papers so as to leave her control and upon her death the property was to go to plaintiff and his sister. He then suggested that plaintiff deed the property back to her "on the agreement that she would make a will leaving one-half of it to you and to Lilly Simmons." This agreement, he wrote, would be enforceable in court. Plaintiff was agreeable to this arrangement. The attorney then drew a will leaving her estate to plaintiff and his sister. At the end of the will, after the attestation clause, the attorney inserted the following: "I agree to leave my property upon my death as provided in this will." Testatrix executed the will and signed this statement August 14, 1944. The minister was one of the witnesses. Thereupon the attorney sent to plaintiff a deed of the Palo

Alto property to be executed by him and a copy of the will and agreement, saying that he was enclosing ''a copy of her will and her agreement to leave her property as provided in the will.'' Plaintiff executed and returned the deed, relying on testatrix' agreement as stated by the attorney and expressed by the writing. Bertha Smith, a close friend of testatrix', testified that after the death of Lillie Summers, testatrix told her she wanted plaintiff to have the property because he had put as much money in it as, if not more than, she had.

Defendant Bland, the executrix, testified that testatrix never referred to the property as belonging to anyone but herself. In 1945 testatrix told her that plaintiff had induced her to deed the property to him upon his promise that he would put her in a nice home or hospital to be cared for. Instead, testatrix had found out he intended to put her in the county hospital. From that time on testatrix had no use for him.

It is obvious that except as affected by the determination of the questions of law hereafter discussed, there was ample evidence to support the court's finding of an agreement to will the property to plaintiff and his sister.

1. *Statute of Frauds.*

Section 1624, subdivision 6, Civil Code, provides that an agreement to devise or bequeath property is invalid unless the same, or some note or memorandum thereof, is in writing and subscribed by the party to be charged. Section 1973, Code of Civil Procedure, is to the same effect.

The test of the memorandum is set forth in *Ellis* v. *Klaff,* 96 Cal.App.2d 471, 476-477 [216 P.2d 15]: ''To be sufficient, the required writing must be one 'which states *with reasonable certainty,* (a) each party to the contract . . . and (b) the land, goods or other subject-matter to which the contract relates, and (c) *the terms and conditions of all the promises* constituting the contract and by whom and to whom the promises are made.' (Restatement, Contracts, § 207. Emphasis added.)''

Let us apply this test to the memorandum here: (a) ''[E]ach party to the contract . . .'' It clearly appears that the promisor is Sarah Williams, the testatrix. The promisees are the persons mentioned in the will—plaintiff and his sister. It is elementary that a memorandum may include by reference another instrument. (See 12 Cal.Jur. 904.) (b) ''[T]he land, goods or other subject-matter to which the

contract relates . . .'' ▉ That, too, is set forth in the will, made a part by reference, ''all of my estate, whether real, personal or mixed . . .'' Practically the only estate testatrix had was the property in question. (c) ''[T]he terms and conditions of all the promises . . . and by whom and to whom the promises are made.'' In determining this question, it must be remembered that plaintiff's part in the performance of the contract had been fully executed. He had already done everything he was to do, namely, conveyed the property to her after having paid considerable sums on it. The only terms and conditions of the promises to be performed at the time the memorandum was signed, was the carrying out of the testatrix' promise to effectually devise the property to plaintiff and his sister. The person by whom the promise was made was testatrix, and the persons to whom it was made were plaintiff and his sister. Defendant contends that the memorandum must show the consideration for the promise. ▉ An agreement to leave by will may be combined with the will. (See *Norton* v. *Estate of Norton,* 41 Cal.App. 614, 619 [183 P. 214].) Some confusion has arisen in the interpretation of section 1624, Civil Code, in this respect due to the fact that its predecessor statute required that as to certain types of contracts the memorandum must express the consideration. Chapter 114, Statutes 1850, pages 266-267, provided that every contract for leasing for a longer period than one year, or for the sale of land, or any interest therein; every agreement that by its terms is not to be performed within one year; every special promise to answer for the debt, default or miscarriage of another; every promise made upon consideration of marriage except mutual promises to marry, were void unless there was a writing ''expressing the consideration'' thereof. In 1872 this statute was superseded by the codes, expressly section 1624, Civil Code, and section 1973, Code of Civil Procedure, neither of which contained or now contains the words ''expressing the consideration'' or any similar statement. In *Rogers* v. *Schulenburg,* 111 Cal. 281 [43 P. 899], dealing with the guarantee of payment of a promissory note which guarantee did not express consideration, the court held that it was not necessary that the consideration be expressed in writing. It pointed out that section 1614, Civil Code, provided ''A written instrument is presumptive evidence of a consideration'' and that section 1615, Civil Code, provided ''The burden of showing a want of consideration sufficient to support an instrument lies with the party seeking to

invalidate or avoid it.'' The court distinguished *Crooks* v. *Tully*, 50 Cal. 254, where it was held that a contract to answer for the debt of another must show the consideration, by pointing out that that case was decided when the statute of 1850 above mentioned was in force, and stated that such requirement is no longer found in the codes, citing section 1624, Civil Code, and section 1973, Code of Civil Procedure.

While in a sense ''the consideration'' is one of the terms of a contract, there is no necessity for expressing it in the ''note or memorandum'' thereof when the consideration has already been paid. In our case no evidence extrinsic to the contract was necessary to carry it into effect. All that was to be done appears in the contract, namely, testatrix was to effectually will her estate to plaintiff and his sister. As said in *King* v. *Stanley*, 32 Cal.2d 584, 588 [197 P.2d 321] : ''Equity does not require that all the terms and conditions of the proposed agreement be set forth in the contract.''

In *Ayoob* v. *Ayoob*, 74 Cal.App.2d 236 [168 P.2d 462], there was an oral agreement by which the testator agreed to bequeath the plaintiff $5,000 if she would marry him and come with him to the United States from her home in Syria. She married him and they went to the consul's office to have their agreement reduced to writing. The writing which was signed by the testator merely provided ''I . . . declare that in the event of my death, the sum of'' $5000 ''of my estate should be left to my wife . . .'' She resided with him in this country until his death. It will be noted that in this writing there is no consideration mentioned, nor any actual words of contract. All it says is ''I . . . declare . . .'' $5000 ''of my estate should be left . . .'' Yet the court held that this was a sufficient memorandum to satisfy the statute of frauds. The court cited many cases and quoted the following from 12 California Jurisprudence, page 905, section 69 : '' 'An oral agreement, within the statute of frauds, may be satisfactorily evidenced, by a subsequent writing, notwithstanding the fact that the agreement has already been executed by one party. This would be the rule, even if the statute were viewed as affecting the substantive validity of the contract. The subsequent written contract relates back to the making of the oral agreement which it embodies, so as to validate the latter under the statute of frauds. This is true, whether the written contract be viewed as merely furnishing the requisite evidence of an oral agreement otherwise valid,

or as a confirmation and ratification of a previously invalid agreement.' . . .

"The failure of the writing to make express mention of the precedent oral agreement is not material. It is sufficient if the proof establishes that together they constitute a single contract." (P. 243.) The consideration for the promise to bequeath the wife the money was shown by parol.

In *Jones* v. *Clark*, 19 Cal.2d 156 [119 P.2d 731], the consideration for an agreement to devise was also proved by parol and held sufficient.

█ Oral testimony is admissible concerning points upon which the written agreement is silent, provided such testimony does not contradict the writing. See *Stockburger* v. *Dolan*, 14 Cal.2d 313, 317 [94 P.2d 33, 128 A.L.R. 83]; *Blahnik* v. *Small Farms Imp. Co.*, 181 Cal. 379, 383 [184 P. 661]. █ Also oral testimony is admissible to show the fairness and adequacy of the consideration. See *Jones* v. *Clark, supra*, 19 Cal.2d 156, 160; *Wolf* v. *Donahue*, 206 Cal. 213, 219 [273 P. 547].

Defendants contend that *Burke* v. *Bank of America*, 34 Cal. App.2d 594 [94 P.2d 58], holds that the consideration must appear in the memorandum in order to meet the requirements of the statute of frauds. That case did not so hold. There the court pointed out that the plaintiffs contended that the writing was the contract between the parties and "They introduced no evidence that any other contract was made" or "no evidence of any circumstances which in any manner explains" the instrument. (P. 597.) Under those circumstances and the fact that the writing failed to show any promise made by Burke, the person to whom the property was to be willed, or any consideration, the court held the writing insufficient to prevent the application of the statute of frauds, and that the writing showed it was merely an agreement to make a gift by will, which type of agreement is unenforceable. The ruling in the Burke case is not applicable to a situation such as here, where the consideration for the agreement to devise is fully executed.

## 2. *Estoppel.*

Even were the memorandum insufficient to satisfy the statute of frauds, defendants, under the circumstances of this case, are estopped to raise the bar of the statute. "The doctrine of estoppel to assert the statute of frauds has been consistently applied by the courts of this state to prevent

fraud that would result from refusal to enforce oral contracts in certain circumstances. Such fraud may inhere in the unconscionable injury that would result from denying enforcement of the contract after one party has been induced by the other seriously to change his position in reliance on the contract [citations], or in the unjust enrichment that would result if a party who has received the benefits of the other's performance were allowed to rely upon the statute. [Citations.] In many cases both elements are present. Thus not only may one party have so seriously changed his position in reliance upon, or in performance of, the contract that he would suffer an unconscionable injury if it were not enforced, but the other may have reaped the benefits of the contract so that he would be unjustly enriched if he could escape its obligations. [Citations.]'' (*Monarco* v. *Lo Greco,* 35 Cal.2d 621, 623-624 [220 P.2d 737].)

▉ Our case is a perfect case for the application of estoppel. Here not only did plaintiff, relying upon testatrix' agreement, convey to her the property of which the court found him to then be the owner, but he paid into the property over $3,000, some $1,500 of which he expended after he had conveyed it to the testatrix.* The court also found that subsequently to the agreement he "continued to give to the said Sarah Williams the love and affection and consideration inherent in the close family relationship, similar to that between mother and son, which, for many years, existed between'' them. To allow the statute of frauds to bar plaintiff's recovery herein would not only injure plaintiff because he had parted with the title to the property and expended moneys thereon, relying upon testatrix' agreement, but also would unjustly enrich defendant Rena who contributed nothing.

3. *Section 1880, subdivision 3, Code of Civil Procedure and Section 707, Probate Code.*

▉ Section 1880, subdivision 3, Code of Civil Procedure, prohibiting parties to an action against an executor or administrator testifying to matters occurring before the death of the decedent is limited by its very terms to an action brought upon a claim or demand against the estate. It has been held

---

*There was some conflict in plaintiff's testimony as to the amounts expended by him, between his testimony in *Estate of Williams, supra,* 99 Cal.App.2d 302, and here. However, the trial court, as was its duty, resolved that conflict.

again and again that an equitable action for specific performance is not an action on a claim or demand against an estate, and that the section does not apply to actions of this type. See *Jones* v. *Clark, supra,* 19 Cal.2d 156, 161, and cases there cited. See also *Porter* v. *Van Denburgh,* 15 Cal.2d 173, 177 [99 P.2d 265] ; *Humes* v. *Humes,* 56 Cal.App.2d 126, 132 [133 P.2d 39]. Likewise it has been determined that this type of action is not a claim against the estate and hence it is unnecessary to file the claim required by section 707, Probate Code. See *Walker* v. *Calloway,* 99 Cal.App.2d 675, 683 [222 P.2d 455] ; *Rogers* v. *Schlotterback,* 167 Cal. 35, 52 [138 P. 728].

4. *Statute of Limitations.*

This action was commenced two and a half years after the death of testatrix, the time when the cause of action arose. Defendants contend that it is barred by section 339, subdivision 1, Code of Civil Procedure, which applies a two-year limitation to actions on oral contracts. This contention is based upon defendants' further contention which we have shown to be erroneous, that the written memorandum was insufficient.

In *Keefe* v. *Keefe,* 19 Cal.App. 310 [125 P. 929], an action to enforce an oral contract to will property, it was held that such an action, although based upon an oral contract, is not governed by section 339, Code of Civil Procedure, because the property involved is impressed with the qualities of a resulting trust in the hands of the defendants and that action may be brought within four years.

5. *Equitable Relief.*

Defendants contend that a cause of action for equitable relief is not stated because it is not shown that money damages would not have amply compensated plaintiff and that therefore plaintiff had an adequate remedy at law. This very contention is well answered in *Jones* v. *Clark, supra,* 19 Cal.2d 156, which was an action similar to this, being an action for quasi specific performance of an agreement to devise property by will. ''Nor is there merit in the contention that plaintiff had an adequate remedy at law. As said in *Wolf* v. *Donohue, supra,* at page 220: 'It is well settled in this state by numerous decisions that a court of equity will decree specific performance of such an agreement [to dispose of property by will] upon the recognized principles by which it

is governed in the exercise of this branch of its jurisdiction.' ''
(P. 160.)

6. *Entire Estate.*

 The court, among other findings, found that plaintiff was the sole heir at law of his sister who died intestate, and that as such he was entitled to the half interest in testatrix' estate which testatrix had contracted to will to the sister, decreed that defendants held the entire estate as constructive trustees for plaintiff, and ordered defendant executor to deliver to plaintiff such estate after payment of claims and expenses of administration. This finding and the decree are correct. The question we are considering here is one of contract rather than of wills. Ordinarily a devise or bequest to a person who dies prior to the death of the testatrix lapses. (See Prob. Code, § 92.) But here we have a contract, made upon a consideration in which testatrix agreed to will her property to two people in equal shares. The death of one of them prior to that of the testatrix does not make the agreement void in any sense. The right to half of testatrix' property, although inchoate as to time, belonged to the sister, and on her death remained a property right of her estate. Had her estate been probated, that right to half of testatrix' property on the latter's death could have been distributed to the sister's heirs or devisees had she left a will. She died intestate with plaintiff as her sole heir. Hence the right to that share of testatrix' property vested in him on the sister's death. While the title vested in plaintiff as heir of his sister on her death, such title, of course, would be subject to an administration for the purpose of paying her debts, if any. Defendants, however, not being heirs of the decedent, are in no position to raise the lack of probate proceedings as to the sister's estate.

The judgment is affirmed.

Peters, P. J., and Wood (Fred B.), J., concurred.