[Civ. No. 21522. Second Dist., Div. One. Oct. 22, 1956.]

THEODORE BRUNSON, Respondent, v. JERRELL BABB, as Executor, etc., et al., Appellants.

*Assigned by Chairman of Judicial Council.

Jerrell Babb, in pro. per., for Appellants.

A. Marburg Yerkes and Belle Silverman for Respondent.

WHITE, P. J.—Plaintiff instituted this action against the above named executor under the last will and testament of David Brunson, and the other above named defendants, as devisees and legatees under the aforesaid will.

Plaintiff's complaint is entitled, "For Restitution—Constructive Fraud, Actual Fraud; To Impress a Trust; To Impose an Equitable Lien; To Quiet Title; For Money" and contains six causes of action. In the first cause of action it is alleged that during the lifetime of decedent there existed between him and plaintiff, "the most confidential relationship"; that plaintiff "reposed the greatest confidence and trust in the decedent DAVID BRUNSON and advised with decedent with respect to his business affairs, and plaintiff believed that the decedent would deal justly and fairly with him in all things. That commencing in the year 1919 plaintiff was discharged from the armed forces of the United States and returned to the city of Los Angeles to live with decedent David Brunson at the family home and was told by the said decedent that the decedent owned the family home in the city of Los Angeles and that plaintiff had no right to any property or money in the estate of James Polk Brunson, the deceased father of plaintiff and of decedent, and that plaintiff had no right in the family residence in the city of Los Angeles; that plaintiff would have to seek a place to live elsewhere, but that decedent would take care of plaintiff. That on or about March 29, 1919 decedent employed plaintiff until about March 22, 1922, at the rate of $2.00 per day. That for this work and labor decedent owed plaintiff the sum of $1,860, but paid

plaintiff only approximately $900. That from time to time plaintiff asked decedent for payment of the balance due and was assured that he "would be paid from the property then owned by decedent or thereafter to be acquired by decedent." That because he relied "upon such representations and promises, plaintiff did not assert any claim against DAVID BRUNSON" during the lifetime of the latter. It is then alleged that from on or about February 1, 1937 to March 25, 1947 plaintiff "attempted to conduct a business and maintain employment in the city of Los Angeles and was repeatedly urged by decedent DAVID BRUNSON to leave his business and abandon his employment to work from time to time for the decedent DAVID BRUNSON at many types of manual labor as from time to time requested by decedent David Brunson: that decedent DAVID BRUNSON repeatedly represented to Plaintiff that he would pay to Plaintiff the reasonable value of Plaintiff's services therefor out of decedent's own property or that if he did not do so he would see that Plaintiff was taken care of out of his property at the time of his death in that whatever property DAVID BRUNSON owned at the time of his death would be left to Plaintiff in payment of the obligations then and there owing from decedent DAVID BRUNSON to Plaintiff as hereinbefore alleged." That in reliance upon the aforesaid representations and promises of decedent, plaintiff engaged in work and labor for the former, all of which is specifically set forth in the complaint. That said services were of the reasonable value of $3,120, but that notwithstanding repeated promises to pay, decedent failed to compensate plaintiff. It is then alleged that from about October 1, 1943 to June 1, 1947, decedent owned a ranch in Riverside County; that plaintiff was induced by decedent "to leave his shoe shining shop for hours or days, as the case might be, and engage in work and labor for decedent on said ranch. That during said period Plaintiff did leave his shop and work for decedent." Then follows a detailed account of the services performed and the allegation that the reasonable value thereof was $3,594. It is then alleged that decedent "repeatedly assured plaintiff that plaintiff need have no concern or worry on the time and manner and mode of payment to him of sums due from decedent; that decedent would pay plaintiff out of his property during the decedent's lifetime or if not paid during the lifetime of decedent DAVID BRUNSON, the Plaintiff would receive DAVID BRUNSON's property at DAVID BRUNSON's death." Then fol-

lows the allegation, "That during the period of time from 1918 to date Plaintiff has been partially disabled from physical injuries received in World War I in the armed services of the United States; that during the entire period of time from 1919 to date of this action Plaintiff has been a resident of the county of Los Angeles, state of California; that on numerous occasions during the period of time from 1919 to the date of the death of decedent DAVID BRUNSON in 1953, decedent DAVID BRUNSON assured Plaintiff that as Plaintiff's older brother he would take care of Plaintiff and requested Plaintiff to always consult decedent and accept decedent's advice on personal, business and family matters, and subsequent to Plaintiff's divorce, in the year 1936, decedent further represented to plaintiff that, if Plaintiff did not remarry, decedent would leave all his property to Plaintiff in fulfillment of the obligations of decedent DAVID BRUNSON to Plaintiff as hereinbefore alleged in this Complaint; that Plaintiff did not marry from 1936 to the present time and has continuously since said year 1936 remained unmarried." That because he relied implicitly upon the promises and representations of his deceased brother, "Plaintiff at no time required from the decedent DAVID BRUNSON any writing, or security in writing, or evidence securing obligations of the decedent to Plaintiff, and relied upon the decedent DAVID BRUNSON's oral promise to plaintiff that decedent would pay Plaintiff out of decedent's property or leave to Plaintiff all decedent's property at the time of decedent's death. That decedent DAVID BRUNSON did not leave his property to Plaintiff at the time of his death, but that by the terms of the Last Will of DAVID BRUNSON heretofore admitted to probate, as hereinabove alleged, Plaintiff does not receive any of decedent DAVID BRUNSON's property."

In his second cause of action plaintiff incorporates the allegations contained in the first cause of action and then alleges the falsity of decedent's representations and the latter's knowledge of such falsity, and that decedent "had no intention of paying to Plaintiff any sums of money or property as payment to Plaintiff for monies owing from decedent or for services rendered to decedent DAVID BRUNSON, or as payment to Plaintiff, for Plaintiff's change of position and rendition of service as from time to time requested by decedent DAVID BRUNSON as hereinbefore alleged."

After alleging his reliance upon decedent's representations and promises, plaintiff avers that he refrained from enforc-

ing any claim he had against decedent during decedent David Brunson's lifetime "for services rendered, for claim to decedent's property, for loss of profits, for loss of earnings, and did in fact repeatedly change his position, to his detriment as hereinbefore alleged." Then follows an allegation that in the will of decedent, "Plaintiff is given no interest whatsoever in the estate of the decedent and is not mentioned in said Will in any respect whatsoever so as to accomplish restitution for money, change of position, value or property heretofore parted with in reliance upon the decedent DAVID BRUNSON's representations and conduct."

In his third cause of action, plaintiff alleges that defendants other than defendant executor, have been unjustly enriched as successors in interest of decedent and that they hold the monies and property of the estate as trustees for plaintiff.

The fourth cause of action seeks to impress a lien upon the property of the estate as "security to plaintiff for restitution to plaintiff of the value of his claims."

The fifth cause of action alleges that plaintiff is the owner of three parcels of real property now held by defendant executor, and that neither decedent's estate or any of the defendants have any right, title or interest in said properties.

The sixth and final cause of action alleges that upon the death of decedent the defendants, other than the defendant executor, became indebted to plaintiff in the sum of $7,674 by reason of the foregoing services allegedly performed by plaintiff at the special instance and request of decedent; that such defendants "severally promised and agreed to deliver and pay to Plaintiff such money or property as they may have acquired by reason of the death of DAVID BRUNSON, Deceased," but have refused so to do.

The prayer is that it be adjudged that defendants have no right, title or interest whatever in the property owned by David Brunson prior to his death, and that plaintiff be adjudged the owner thereof, and that defendants be declared trustees for plaintiff of all property now owned or hereafter acquired pursuant to the decree of distribution in the estate of decedent; and that plaintiff "may have restitution by a judgment in his favor in the sum of SEVEN THOUSAND SIX HUNDRED SEVENTY-FOUR DOLLARS ($7,674.00) jointly and severally against all defendants herein claiming any interest in the property of DAVID BRUNSON, Deceased."

By their answers, defendants denied generally the allegations of plaintiff's complaint, and as separate defenses allege

that, (1) plaintiff's complaint in its entirety does not state facts sufficient to constitute a cause of action; (2) that each count of plaintiff's complaint is barred by the provisions of section 336; section 1 of subsection 2 of section 337; section 2 of subsection 2 of section 337 of the Code of Civil Procedure; section 3 of subsection 2 of section 337; subsection 4 of section 338; subsection 1 of section 339; and section 343 of the Code of Civil Procedure. It was further alleged that plaintiff's complaint and each count thereof was barred by the provisions of section 1624, subsection 1 of the Civil Code in that the alleged agreement set forth in the complaint was not to be performed within a year from the making thereof; and finally, that because the agreement, by its terms, was not to be performed during the lifetime of the promissor, decedent herein, and allegedly devises or bequeaths property to plaintiff or makes provision for the latter by will, not being in writing, is barred by the provisions of subsection 6 of section 1624 of the Civil Code.

The cause proceeded to trial before the court sitting without a jury, resulting in a judgment for plaintiff decreeing that defendant Jerrell Babb, as executor of the last will of David Brunson, deceased, pay to the plaintiff the sum of $10,000 "with simple interest thereon from the 16th day of May, 1953, at the rate of 7% in the amount of $1,337.36." It was further adjudged that plaintiff has a lien upon all assets of the estate of decedent in the possession of said executor, and a lien upon all right, title and interest of all defendants in and to the property of said decedent. That defendant executor pay to plaintiff all sums set forth in the judgment in due course of administration. It was further ordered, "That upon non-payment to plaintiff by Jerrell Babb, Executor, of said sums in due course of administration, the plaintiff may foreclose the lien imposed herein according to law by public sale by the Sheriff of the County in which said assets are located and that the proceeds arising from the foreclosure sale be applied to the satisfaction of this Judgment by payment to plaintiff of the full sum then payable to him under this Judgment together with interest and costs accruing after Judgment." From such judgment all defendants prosecute this appeal.

The trial, which extended, with interruptions and continuances, over a period of several months, resulting in a reporter's transcript of more than 1,800 pages.

For the purpose of giving consideration to the issues raised

on this appeal we deem it unnecessary to set forth a detailed narrative of the voluminous testimony received at the trial. On this appeal, defendants do not contend that the evidence, if legally admissible upon the trial, is insufficient to support the findings. They rely for a reversal upon the claimed erroneous ruling of the trial judge. An examination by us of the voluminous transcript impresses us that unless the rulings on questions of law arising during the trial were erroneous, the judgment must be affirmed because, while the testimony adduced is in conflict, there is contained therein evidence of sufficient substantiality to support the conclusions arrived at by the duly constituted arbiter of the facts. We shall therefore epitomize the findings of the court below, in which is to be found the factual background surrounding this litigation.

Insofar as here material and pertinent the court found in accordance with plaintiff's complaint, "That it is true that plaintiff, during the lifetime of the decedent DAVID BRUNSON, was the younger brother of said decedent, and at all times prior to his death, commencing in childhood of plaintiff, the most confidential relationship existed between the plaintiff and the decedent DAVID BRUNSON; and it is further true that plaintiff reposed the greatest confidence and trust in the decedent DAVID BRUNSON and advised with decedent with respect to his business affairs, and further that plaintiff believed that the decedent would deal justly and fairly with him in all things. That it is true that commencing in the year 1919 plaintiff was discharged from the armed forces of the United States and returned to the City of Los Angeles to live with decedent DAVID BRUNSON at the family home and was told by said decedent that decedent DAVID BRUNSON owned the family home in the City of Los Angeles and that plaintiff had no right to any property or money in the estate of JAMES POLK BRUNSON, the deceased father of plaintiff and of decedent, and that plaintiff had no right in the family residence in the City of Los Angeles; that plaintiff would have to seek a place to live elsewhere, but that decedent would take care of plaintiff. . . .

"That it is true that from the period of time from on or about February 1, 1937 to on or about March 25, 1947, plaintiff resided with decedent DAVID BRUNSON in the City of Los Angeles and paid board and room in full for said residential quarters during the entire period of time of said residence; that during the said full period of time from

1937 to 1947 plaintiff attempted to conduct a business and maintain employment in the City of Los Angeles and was repeatedly urged by decedent DAVID BRUNSON to leave his business and abandon his employment to work from time to time for the decedent DAVID BRUNSON at many types of manual labor as from time to time requested by decedent DAVID BRUNSON; that DAVID BRUNSON repeatedly represented to plaintiff that he would pay to plaintiff the reasonable value of plaintiff's services therefor out of DAVID BRUNSON's property or that if he did not do so he would see that plaintiff was taken care of out of DAVID BRUNSON's property at the time of DAVID BRUNSON's death in that whatever property DAVID BRUNSON owned at the time of his death would be left to plaintiff in payment of the obligations then and there owing from decedent DAVID BRUNSON to plaintiff . . . That it is true that in reliance upon said representations and promises of decedent DAVID BRUNSON, from the year 1937 to 1947, plaintiff engaged in the following work and labor for decedent DAVID BRUNSON, to wit:

"During the period of time from on or about October 1, 1937, to on or about October 1, 1943, plaintiff at the request of decedent DAVID BRUNSON, did assist said decedent in decedent's business of hauling sand, gravel and related materials by loading and unloading said decedent's trucks and driving said trucks, and by assisting decedent in any other manner as requested by him and doing any work for decedent as requested by said decedent. It is true that during said period plaintiff was engaged in the shoe shining business in the City of Los Angeles, State of California, and that decedent did frequently request plaintiff to leave his said business to perform said work and labor for decedent and plaintiff did so leave his business and perform said work. It is true that said services of plaintiff were required by decedent during said period on an average of twenty hours a week and that plaintiff rendered to decedent DAVID BRUNSON for said period services of a value of THREE THOUSAND ONE HUNDRED TWENTY DOLLARS ($3,120.00). It is true that DAVID BRUNSON, deceased, at no time paid plaintiff for said services, and it is further true that decedent repeatedly assured plaintiff that he would be paid for his work and services rendered to decedent DAVID BRUNSON.

"It is further true that during the period of time from on or about October 1, 1943, to on or about June, 1947, decedent DAVID BRUNSON owned and operated a ranch located

at Riverside County, State of California; and it is true that plaintiff was induced by decedent DAVID BRUNSON to leave his shoe shining shop and engage in work and labor for decedent on said ranch. That during said period plaintiff did leave his shop and work for decedent; that said work included manual labor of an agricultural type, operating and maintaining farm implements and equipment, feeding livestock and cattle, harvesting of grain, gathering eggs and bringing them to Los Angeles for sale, of taking care of the chickens and diverse other tasks necessary to be done on said ranch; that said employment during the entire period of time from 1943 to 1947 required plaintiff's services on an average of 25 working hours per week throughout the calendar year, except that each year in said years, during the three months period of harvesting covering the months of July to October, plaintiff's services were required by decedent DAVID BRUNSON to the extent of 45 hours a week; that in fact plaintiff did perform services totaling 45 hours a week during the three months harvesting season of each of said years 1943 to 1947, an average of 62 days during said season; that it is true that plaintiff performed all of said services and was assured by decedent his services were worth Six Dollars ($6.00) a day for each day he worked for decedent, that the full value of the services rendered to decedent DAVID BRUNSON by plaintiff for said period was THREE THOUSAND FIVE HUNDRED NINETY-FOUR DOLLARS. That it is true that decedent DAVID BRUNSON at no time paid plaintiff for the services rendered by plaintiff for decedent between the years 1937 to 1947; and it is further true that decedent DAVID BRUNSON repeatedly assured plaintiff that plaintiff need have no concern or worry on the time and manner and mode of payment to him of the sums due from decedent; that decedent would pay plaintiff out of his property during the decedent's lifetime, or, if not paid during the lifetime of decedent DAVID BRUNSON, the plaintiff would receive DAVID BRUNSON's property at DAVID BRUNSON's death.

"That it is true that during the period of time from 1918 to date plaintiff has been partially disabled from physical injuries received in World War I in the armed services of the United States; that during the entire period of time from 1919 to the date of this action plaintiff has been a resident of the County of Los Angeles, State of California; that on numerous occasions during the period of time from 1919 to the date of the death of decedent DAVID BRUNSON in 1953,

decedent DAVID BRUNSON did assure plaintiff that as plaintiff's older brother he would take care of plaintiff and decedent requested plaintiff to always consult him and accept decedent's advice on personal, business and family matters, and subsequent to the year 1936, decedent further represented to plaintiff that, if plaintiff did not remarry, decedent would leave all his property to plaintiff in fulfillment of the obligations of decedent DAVID BRUNSON to plaintiff as hereinbefore alleged in this Complaint; that in reliance upon said promise plaintiff did not marry from 1936 to the present time and has continuously since said year 1936 remained unmarried.

"That it is true that during all the period of time hereinbefore alleged, from 1919 to 1953, plaintiff repeatedly at the instance and request of decedent, his brother, DAVID BRUNSON, relinquished employment elsewhere, relinquished the opportunity to maintain his business, and the opportunity to go into other businesses including the hotel and rooming house business, and relinquished enforcement of any and all claims plaintiff had against decedent, in reliance upon the conduct and representations of decedent DAVID BRUNSON to plaintiff herein set forth, and because of the confidential relationship existing as aforesaid plaintiff relied solely upon decedent DAVID BRUNSON's declarations, promises, and representations to him hereinabove mentioned, and believed that the decedent's representations were made in truth and in sincerity and that the decedent DAVID BRUNSON would conscientiously abide thereby; and it is true that plaintiff at no time required from the decedent DAVID BRUNSON any writing or security in writing, or evidence securing obligations of the decedent to plaintiff, and relied upon the decedent DAVID BRUNSON's oral promise to plaintiff that decedent would pay plaintiff out of decedent's property or leave to plaintiff all decedent's property at the time of decedent's death. That it is true that decedent DAVID BRUNSON did not leave his property to plaintiff at the time of his death, but that by the terms of the Last Will of DAVID BRUNSON heretofore admitted to probate, plaintiff does not receive any of decedent DAVID BRUNSON's property."

The court further found that by reason of the "happenings, occurrences, events . . . and the oral representations" of the decedent, that plaintiff would own all of the decedent's property upon the death of the latter, and that by reason of his conduct as aforesaid decedent during his lifetime was unjustly enriched. That the defendants other than defendant

executor, as successor in interest of decedent, have been unjustly enriched in money and property, which they will receive under the provisions of decedent's last will; "in that said defendants have not . . . paid any consideration to decedent or to plaintiff for any interest they may receive or be entitled to receive under the last will of DAVID BRUNSON, Deceased, and defendants and each of them, have been unjustly enriched by properties owned by DAVID BRUNSON at the time of his death, which, in fairness, justice and equity are owned by plaintiff, and that defendants and each of them hold said monies and properties as Trustees for plaintiff.

"That the allegations of Paragraph II of plaintiff's Fourth Cause of Action are true; that repeatedly and continuously during the period of time from 1919 to the date of his death, decedent DAVID BRUNSON did orally promise to plaintiff that the value of all services performed by Plaintiff for decedent DAVID BRUNSON would be secured by payment to Plaintiff of the value thereof out of decedent DAVID BRUNSON's property at the time of the death of decedent; that defendants who claim any interest in the property of DAVID BRUNSON, whether by Will or succession, or who may acquire any property of the decedent, whether by Will or by succession, acquire the same subject to plaintiff's prior lien in the sum of TEN THOUSAND DOLLARS ($10,000), including interest at the rate of 7% per annum from May 16, 1953, to secure restitution to Plaintiff out of said money or property." The court also found that plaintiff was not the owner of any of the real property held by decedent at the time of his death, but that the defendant's interest in said real property is "subject to plaintiff's Superior Lien thereon in the sum of $10,000.00."

The court further found "That all the allegations and denials of each of the defendants contained in the answers are untrue and it is not true that the plaintiff is barred by the provisions of: section 336, section 1 of subsection 2 of section 337, section 3 of subsection 2 of section 337, subsection 4 of section 338, subsection 1 of section 339, or by section 343, of the Code of Civil Procedure of the State of California; or any of the said sections.

"And further, it is not true that plaintiff is barred by the provisions of Sub-section 1 of Section 1624 of the Civil Code of the State of California; and it is not true that plaintiff is barred by the provisions of Sub-section 6 of Section 1624 of said Civil Code; and it is not true that

226

plaintiff is barred by the provisions of Section 1880 (3) of the Code of Civil Procedure.''

██ Appellants' first ground for reversal of the judgment is that the court erred in overruling their objection to the introduction of any evidence on the ground that the complaint does not state facts sufficient to constitue a cause of action. In that regard the record reflects that at the commencement of the trial defendant executor was called as a witness under section 2055 of the Code of Civil Procedure. After affirmatively answering a question as to whether he was the duly qualified executor under the last will of decedent, and when the next question was asked, objection was made to the same ''on the ground that it is irrelevant, incompetent and immaterial and on the further ground that the pleadings do not state—that all the pleadings, including all the counts, do not state facts sufficient to constitute a cause of action in this case . . . And I want to add to that objection : I object to the introduction of any evidence in this case on the same grounds.''

Without citation of any supporting authorities appellants urge that ''The entire theme of the complaint is that plaintiff performed services for the deceased, and that he was not paid therefor, and then pleads the reasonable value of the services, and the whole complaint amounts to nothing more than a breach of contract and a case in law seeking to recover the reasonable value of services rendered to deceased during his lifetime.

''The complaint wholly fails to state a cause in equity, in that the allegations therein pertaining to equity are mere conclusions, and the complaint shows on its face that it is nothing more than a breach of contract, that plaintiff has an adequate remedy at law, and furthermore, the complaint nowhere alleges or attempts to allege the acts and conduct on the part of David Brunson, deceased, towards his brother, Theodore Brunson, were unconscionable, it being necessary that the acts and conduct of the deceased be unconscionable before a case in equity would arise.'' Much of appellants' argument on this point is directed to claimed uncertainty as to the meaning of many allegations in plaintiff's complaint and the charge that other allegations amounted only to conclusions. ██ All these contentions furnished grounds for a special demurrer and not having availed themselves of this remedy (Code Civ. Proc., § 430), such objections will be deemed to have been waived (Code Civ. Proc., § 434).

Failure to file a demurrer does not of course waive the right at the trial to challenge the sufficiency of the complaint to state a cause of action, but a motion to exclude evidence based on insufficiency of the complaint is in the nature of a general demurrer and may be sustained only if the allegations of the complaint, deemed true for this purpose, are totally insufficient to support a judgment for plaintiff.

And, a demurrer which attacks an entire pleading should be overruled if one of the counts therein is not vulnerable to the objection (*Lord* v. *Garland,* 27 Cal.2d 840, 850 [168 P.2d 5]). We have examined the complaint, the substantial allegations of which are hereinbefore set forth, and are persuaded that since no demurrer was interposed before trial, and the cause was tried with full knowledge of the issues, any defects in the complaint were not prejudicial. As was said in *Horton* v. *Horton,* 115 Cal.App.2d 360, 367 [252 P.2d 397]: "The office of pleadings is to outline the issues so that the parties may know what is involved in the litigation. They should, of course, be made as clear as possible, but are not intended to serve as a trap for the inexperienced or the unwary."

We have come to the conclusion that to reverse the judgment herein on the ground of insufficiency of the complaint to state a cause of action would unreasonably subordinate substance to form and would challenge the plain and meaningful words of section 4½ of article VI of our state Constitution. Weighed in the crucible of both law and reason the ruling of the trial court was correct.

Appellants' second ground for reversal is that the court erred in overruling their objections to testimony pertaining to matters and things happening prior to the death of decedent. This claim is based on contentions that the alleged agreements between decedent and plaintiff were all oral and therefore in violation of the statutes pertaining to wills, the statute of frauds and the so-called "Dead Man's Statute" (Code Civ. Proc., § 1880, subd. 3). In the instant proceeding the court found that appellants were holding certain monies and property as trustees for respondent. As was said in *Estate of Dutard,* 147 Cal. 253, 256 [81 P. 519], "It is well settled that one who claims as his own, adversely to an estate, specific property held and claimed by the estate, cannot be called a creditor of the estate within the meaning of the probate law. The decisions are clear and conclusive upon the proposition that where one seeks to recover from

the representatives of an estate specific property alleged to have been held in trust by the decedent at the time of his death, he is not seeking payment of a claim from the assets of the estate, is not required to present a claim as a creditor, and is not a 'creditor of the estate.' His action is not founded upon a claim or demand against the estate. (Citing cases.)'' (See also *Holland* v. *Bank of Italy*, 115 Cal.App. 472, 484 [1 P.2d 1031]; *Porter* v. *Van Denbergh*, 15 Cal.2d 173, 176 [99 P.2d 265].) Since respondent herein was not seeking to enforce a debt of the decedent against his property but to obtain from the executor and beneficiaries of the estate money and property, upon the ground that it did not belong to the estate, but was in fact his own property, respondent was a competent witness to testify to matters or facts occurring prior to the demise of decedent. Furthermore, the record is replete with testimony of disinterested witnesses establishing a confidential relationship upon which respondent's restitutionary rights were predicated. We perceive no prejudicial error in the ruling of the trial court.

■ As to appellants' reliance upon the statute of frauds, we are satisfied that they are estopped from relying thereon. The courts have consistently applied the doctrine of estoppel to invoke the statute of frauds to prevent fraud that would result from refusal, in certain circumstances, to enforce oral contracts. The instant case is replete with testimony that respondent changed his position in reliance upon, or in performance of, the contract, that if the contract were not enforced respondent would suffer unconscionable injury, while appellants would be unjustly enriched should they escape the obligations of such contract made by decedent. The case at bar is strikingly similar to the factual situation present in *Monarco* v. *Lo Greco*, 35 Cal.2d 621, and the holding therein at pp. 623, 624, 625 [220 P.2d 737], strongly impresses us that the trial court was correct in concluding that appellants were foreclosed from seeking refuge by resort to the statute of frauds (Civ. Code, § 1624; Code Civ. Proc., § 1973). (See also *Potter* v. *Bland*, 136 Cal.App.2d 125, 132, 133 [288 P.2d 569]; *Wilk* v. *Vencill*, 30 Cal.2d 104, 107 [180 P.2d 351].)

■ Appellants' next assignment of error is that the court erred in refusing to grant their motion for nonsuit on the grounds that the alleged agreements were in violation of the statute of frauds. This contention we have herein decided adversely to appellant, as we have also done with regard to appellants' claim with regard to the applicability of section

1880, subdivision 3, of the Code of Civil Procedure. With reference to appellants' contention that respondent failed to invoke an adequate remedy at law by filing a proper claim against the estate, we are satisfied it was not necessary for respondent to first file a claim against the estate of decedent as a prerequisite to maintaining this action. Being an equitable action to recover money or property allegedly held in trust by appellants, it is not a claim or demand against an estate and, accordingly, it is not necessary to file the claim required by section 707, Probate Code (*Back* v. *Farnsworth,* 25 Cal.App.2d 212, 220 [77 P.2d 295] ; *Potter* v. *Bland, supra,* p. 134). Appellants' contention that the motion for a nonsuit should have been granted because of the insufficiency of the complaint is hereinbefore answered by the conclusion we have arrived at as to the correctness of the action of the court in overruling appellants' objection to the introduction of any evidence. As to the sufficiency of the evidence to justify a denial of appellants' motion for a nonsuit there can be no question (*Estate of Flood,* 217 Cal. 763, 768 [21 P.2d 579]).

Appellants next urge that the court erred in encumbering the assets of the estate with an equitable lien. Appellants misconceive the theory of respondent's action. The latter is not asserting a claim against the decedent's estate, but claimed an interest in decedent's property by reason of the promises and representations made by the latter to respondent. This is an action whereby respondent sought the intervention of equity to prevent appellants from retaining and enjoying the benefits of property acquired by alleged fraudulent or other wrongful acts of decedent, by declaring appellants trustees of the property, in the amount of the judgment rendered, for the benefit of respondent who, according to the judgment, would be entitled to it. Tested by the standard that equity courts look with favor upon equitable liens when employed to do justice and equity, and to prevent unfair results, we are satisfied that, under the facts and circumstances present in the case at bar, the court was justified in finding that an equitable lien was created (*West* v. *Stainback,* 108 Cal.App.2d 806, 816, 817 [240 P.2d 366] ; *Estate of Henshaw,* 68 Cal.App.2d 627, 636 [157 P.2d 390] ; *Wagner* v. *Sariotti,* 56 Cal.App.2d 693, 698 [133 P.2d 430]).

What we have hereinbefore stated furnishes sufficient answer to appellants' claim that the court erred in its findings of fact and conclusions of law and judgment, in that (a) the pleadings do not state facts sufficient to constitute a cause

of action; (b) the plaintiff provided no case in law or in equity, or otherwise; and (c) the evidence is insufficient to support the findings of fact, conclusions of law and judgment.

Appellants' final contention is that the court erred in allowing interest to accrue on the judgment from the date of decedent's death. It is appellants' contention that the only interest that can be legally charged in the instant action is that accruing from the date of the judgment. We have concluded that this case comes within the purview of Civil Code, section 3288. The court found that appellants were trustees for respondent and that decedent received from respondent the benefit of money and labor contributed by the latter in reliance upon the promises of decedent that he "would deal justly and fairly with him (respondent) in all things"; that decedent represented to respondent that he (decedent) "would pay to plaintiff the reasonable value of plaintiff's services therefor out of DAVID BRUNSON's property or that if he did not do so he would see that plaintiff was taken care of out of DAVID BRUNSON's property at the time of DAVID BRUNSON's death in that whatever property DAVID BRUNSON owned at the time of his death would be left to plaintiff in payment of the obligations then and there owing from decedent DAVID BRUNSON to plaintiff. . . ." ■■■ We are persuaded that under all the circumstances present in the case at bar, it cannot be said, as a matter of law, that the court abused its discretion in awarding interest from the date of decedent's death (*West* v. *Stainback, supra,* p. 819). The question presented to the trial court for determination was whether decedent would be held to his promises and pledges made to respondent that the former was holding the latter's property as trustee, or whether the decedent would be held to his alleged promise to leave all his property to respondent upon the former's death. The trial court adopted the first abovementioned theory, and we are satisfied its determination is supported by substantial evidence.

The judgment is affirmed.

Doran, J., and Fourt, J., concurred.

A petition for a rehearing was denied November 19, 1956, and appellants' petition for a hearing by the Supreme Court was denied December 19, 1956. Schauer, J., was of the opinion that the petition should be granted.