[No. B152403. Second Dist., Div. One. Aug. 29, 2002.]

EUGENE M. WILKISON III, Plaintiff and Respondent, v.
CYNTHIA RUTH WILKISON WIEDERKEHR, Defendant and Appellant.

COUNSEL

Allard, Shelton & O'Connor and Gary C. Wunderlin for Defendant and Appellant.

Law Offices of Cynthia Dersh Schein, Cynthia Dersh Schein and Joseph M. Hartley for Plaintiff and Respondent.

## OPINION

**MALLANO, J.**—Several of plaintiff's relatives signed an agreement obligating each of them to make a will leaving the family home to plaintiff's father. If all of the signatories had honored the agreement, plaintiff would have received the property by way of his father's will. Instead, plaintiff's grandmother changed her will shortly before her death, which had the effect of leaving the property to plaintiff's aunt. The home was sold, and the proceeds were placed in a bank account.

Plaintiff filed this action against his aunt, alleging a cause of action for quasi-specific performance, seeking to impose a constructive trust on the proceeds from the sale of the home. The trial court found in plaintiff's favor.

We conclude that plaintiff cannot maintain this action, which seeks an equitable remedy, because he had an adequate remedy at law, namely, a claim based on his grandmother's breach of the written agreement to leave the property to his father. Accordingly, we reverse.

I

### BACKGROUND

In March 1979, plaintiff's grandparents, father, and aunt signed an agreement providing that the father would purchase the aunt's interest in the grandparents' home for $10,000. The agreement also stated that plaintiff's grandparents would bequeath the home to plaintiff's father and his issue. By express provision, the agreement was binding on the signatories' heirs, successors in interest, and personal representatives.

On March 13, 1979, plaintiff's grandparents executed wills in conformity with the written agreement (hereafter the March 1979 agreement). Plaintiff's father paid plaintiff's aunt $10,000 for her interest in the home. Plaintiff's father also executed a will, leaving all of his property, personal and real, to his issue.

One week after signing the documents, plaintiff's grandfather died. In October 1985, plaintiff's father died, leaving plaintiff as his only heir. Plaintiff's father had a life insurance policy designating plaintiff's grandmother as the primary beneficiary and plaintiff as the secondary beneficiary. In late 1985, the grandmother assigned the insurance proceeds to plaintiff. In January 1996, plaintiff received $276,000 under the policy.

On January 2, 1986, plaintiff's grandmother revoked her 1979 will and executed a holographic will, leaving all of her property, including the family home, to plaintiff's aunt.

In February 1999, plaintiff's grandmother decided to sell the home and put it on the market. In early March 1999, she contracted to sell the property to a third party for $400,000 and opened escrow. On March 23, 1999, she died, with escrow still pending.

On April 12, 1999, plaintiff and his aunt, by agreement, were appointed co-special administrators of his grandmother's estate for the sole purpose of completing the sale of the property. The sale was concluded and the proceeds were placed in a bank account held by the estate.

On April 14, 1999, plaintiff's aunt filed a notice of petition to administer the estate of his grandmother. The notice, which was served on plaintiff, stated: "IF YOU ARE A CREDITOR or a contingent creditor of the deceased you must file your claim with the court and mail a copy to the personal representative appointed by the court within four months from the date of first issuance of letters . . . ." Plaintiff filed written objections to the petition and his aunt's appointment as administrator.

On September 7, 1999, the will of January 2, 1986—not March 13, 1979—was admitted to probate, and plaintiff's aunt was appointed "Administrator with Will Annexed." "Letters of Administration with Will Annexed" were issued to the aunt.

In December 1999, plaintiff filed a creditor's claim in the probate proceeding, seeking $69,050 for monthly payments he had made to his grandmother for her support and maintenance. He did not file a claim with regard to his grandmother's alleged breach of the March 1979 agreement.

On March 20, 2000, plaintiff filed this action against his aunt (hereafter defendant), in her individual capacity and as administrator of his grandmother's estate, alleging causes of action for (1) quasi-specific performance to impose a constructive trust on estate assets, (2) breach of the March 1979 agreement, and (3) revocation of his grandmother's second will due to mistake and duress. Defendant responded with a demurrer. As to the cause of action for breach of the March 1979 agreement, defendant argued that plaintiff was not entitled to relief because he had not filed a creditor's claim in the probate proceeding alleging such liability.

In response to the demurrer, plaintiff filed an amended complaint. (See Code Civ. Proc., § 472.) This time, he named defendant in her individual capacity only. In the body of the amended complaint, he alleged that defendant was the administrator of his grandmother's estate. The complaint contained a single cause of action for quasi-specific performance, seeking to

impose a constructive trust on the proceeds from the sale of the real property. Plaintiff also alleged that "unless defendant . . . is restrained from expending or otherwise disbursing the proceeds from the sale of the property . . . , she will expend said monies which properly belong to plaintiff . . . ."

The case was tried to the court on June 11, 2001. After closing arguments, the matter was taken under submission. By minute order the following day, the trial court announced its intended decision to enter judgment for plaintiff. As instructed by the order, plaintiff's counsel submitted a proposed judgment. It consisted of two parts. Under the first part, the trial court imposed a constructive trust upon the proceeds from the sale of the real property, directing defendant in her individual capacity to retain the money for plaintiff's benefit. Under part two, defendant was instructed as the administrator of the estate to deliver the proceeds to plaintiff.

The trial court entered judgment on July 27, 2001. Defendant filed a timely appeal.

## II

### DISCUSSION

■ "A judgment or order of a lower court is presumed to be correct on appeal, and all intendments and presumptions are indulged in favor of its correctness." (*In re Marriage of Arceneaux* (1990) 51 Cal.3d 1130, 1133 [275 Cal.Rptr. 797, 800 P.2d 1227].) ■ We review the trial court's resolution of factual issues under the substantial evidence test. (*Engineers & Architects Assn. v. Community Development Dept.* (1994) 30 Cal.App.4th 644, 653 [35 Cal.Rptr.2d 800].) Under that test, " '[t]he power of the appellate court begins and ends with a determination as to whether there is any substantial evidence, contradicted or uncontradicted,' to support the trial court's findings." (*Estate of Leslie* (1984) 37 Cal.3d 186, 201 [207 Cal.Rptr. 561, 689 P.2d 133].) We review the trial court's conclusions of law under a de novo standard. (*Masonite Corp. v. Superior Court* (1994) 25 Cal.App.4th 1045, 1050-1051 [31 Cal.Rptr.2d 173].)

As to the facts, defendant states in her opening brief that "[u]ndisputed testimony at trial reflected that [plaintiff's grandmother] made the assignment [of life insurance proceeds] to [plaintiff] in lieu of any interest in [the real property]." That statement, however, is not correct.

Although defendant and another relative testified that the insurance proceeds were a substitute for the real property, plaintiff testified that he had no

such agreement with his grandmother and that she had never suggested it. On cross-examination, plaintiff testified that he had not asked for the insurance proceeds, nor had he ever said he was entitled to them. He testified that his grandmother decided to "give" him the money. The trial court chose to believe plaintiff. As stated, we defer to the trial court's resolution of conflicting evidence and its determinations as to credibility.

With that factual issue resolved, the material facts are not in dispute, and we proceed to decide legal issues independently of the trial court. At the heart of the case is plaintiff's assertion that the trial court properly enforced the March 1979 agreement, which required his grandmother to make a will leaving the family home to his father and his father's issue. ■ "An action of the type involved here has been called one for quasi-specific performance of the contract to make a will. . . . Since the making of a will cannot be compelled, there can be no specific performance of such a contract in the strict sense, but under certain circumstances equity will give relief equivalent to specific performance by impressing a constructive trust upon the property which decedent had promised to leave to plaintiff." (*Ludwicki v. Guerin* (1961) 57 Cal.2d 127, 130 [17 Cal.Rptr. 823, 367 P.2d 415].)

Defendant presents a two-pronged argument in opposing quasi-specific performance. First, quasi-specific performance is equitable in nature, and plaintiff had an adequate remedy at law, namely, a civil action for damages caused by the breach of the March 1979 agreement. Second, plaintiff cannot maintain an action for breach of the agreement because he did not file the requisite creditor's claim in his grandmother's probate proceeding. We agree on both counts.

These issues were resolved by our Supreme Court more than 85 years ago in *Morrison v. Land* (1915) 169 Cal. 580 [147 P. 259] (*Morrison*). There, the complaint alleged as follows. The defendant owned a hotel in Sacramento for a period of about 40 years. Throughout that time, the plaintiff served as the hotel's chief clerk, accountant, and bookkeeper. He assisted the defendant in the management and operation of the hotel and acted as the assistant manager when the defendant was not present. Over the years, the plaintiff received offers of employment from other hotels willing to pay him higher compensation.

To keep the plaintiff in his employ, the defendant agreed that—in the words of the complaint—" 'if he, said plaintiff, would remain with [the defendant] . . . and thereafter attend to, render and perform at [defendant's] said Western Hotel, such services as he, plaintiff, was then performing for' [defendant], 'so long as [defendant] . . . owned and conducted said Western

Hotel, that he[, defendant,] . . . would by his last will and testament devise and bequeath to plaintiff the sum of fifty thousand dollars.'" (*Morrison, supra,* 169 Cal. at p. 583.) In reliance on the defendant's promise, the plaintiff remained at the hotel until the defendant retired. (*Ibid.*)

Upon the defendant's death, his will was admitted to probate. The will left nothing to the plaintiff, who filed a civil action against the executors, executrix, devises, and legatees, seeking quasi-specific performance of the defendant's agreement to leave him $50,000. The complaint did not allege that the plaintiff had submitted a claim for payment to the executors and executrix. The trial court sustained demurrers to the complaint and dismissed the action on the ground that the plaintiff had failed to state facts sufficient to constitute a cause of action.

On appeal, the Supreme Court affirmed, explaining: "There is no dissent in the authorities from the proposition that one may make a valid contract with another to devise or bequeath property by his last will in a certain specified way. It is clear that in the event of a breach of such a contract the party damaged has an action at law for the damage caused by such breach of the promisor, and in some cases this, by reason of the circumstances, may be his only remedy, for a resort to any equitable remedy can be had only where the circumstances are such as to make the case one within the well-settled principles relative to the proper exercise of equitable jurisdiction.

"Where the party damaged is restricted to his remedy at law for the breach, he must necessarily proceed upon the theory that he is a 'creditor' of the deceased, having a 'claim against the estate' 'arising upon contract,' within the meaning of those words as used in our probate law, and he is subject to the provisions of our statutes requiring presentation of claims to the executor or administrator and judge. (Code Civ. Proc., sec. 1490 et seq. [now Prob. Code, § 9000 et seq.].) In the absence of such presentation, such a claim, by express provision of the statute, is forever barred. [(See Prob. Code, § 9002, subd. (b); *Venturi v. Taylor* (1995) 35 Cal.App.4th 16 [41 Cal.Rptr.2d 272].)] While, owing to the nature of the contract before us, a final breach cannot be regarded as occurring until the death of the deceased, the breach was committed by the deceased, and the liability on account thereof is his. . . . [I]t is essential to an action for breach of contract to compensate one for services by making provision in such person's favor in a will, that a claim against the estate be presented, that no claim could exist against the estate in such case except one founded upon the fact that such services were performed and no provision made in the will for compensation, and that the particulars of the claim should be stated. It is well settled that where presentation of a claim against the estate is essential, a complaint

which does not aver that the claim has been presented fails to state a cause of action." (*Morrison, supra,* 169 Cal. at pp. 584-585.)

The court continued, emphasizing the distinction between equitable and legal remedies: "[C]ourts of *equity,* to use the language of Pomeroy, 'will under special circumstances, enforce a contract to make a will, or to make a certain testamentary disposition, . . . not by ordering a will to be made, but by regarding the property in the hands of the heirs, devisees, assignees, or representatives of the deceased promisor, as impressed with a trust in favor of the plaintiff, and by compelling defendant, who must, of course, belong to some one of these classes of persons, to make such a disposition of the property as will carry out the intent of the agreement.' . . .

"[I]t is elementary that where, as here, the primary right of a party is *legal* in its nature, as distinguished from *equitable,* and one for which the law affords some remedy, as here damages by way of compensation for breach of contract, a proper exercise of the equitable jurisdiction will not give equitable relief in any case where the legal remedy is full and adequate and does complete justice. No principle of equitable jurisprudence is more firmly established than this. . . . For instance, the exclusive jurisdiction of equity to grant relief by way of specific performance of a contract will be exercised only in those cases where the legal remedy of compensatory damages is insufficient under the circumstances of the case, in the opinion of the court, to do complete justice between the parties." (*Morrison, supra,* 169 Cal. at p. 586, italics added and omitted.)

The court in *Morrison* recognized that the legal remedy of damages is generally inadequate in real property disputes: "[C]ourts of equity have established the . . . rule that in general the legal remedy of damages is inadequate in all agreements for the sale or letting of land . . . ." (*Morrison, supra,* 169 Cal. at pp. 586-587.) Other authorities are in accord. (See, e.g., *Porporato v. Devincenzi* (1968) 261 Cal.App.2d 670, 677 [68 Cal.Rptr. 210]; *Remmers v. Ciciliot* (1943) 59 Cal.App.2d 113, 119-120 [138 P.2d 306]; see also Civ. Code, § 3387.)

In addition to cases involving real property, courts will grant quasi-specific performance of an agreement to make a will where a plaintiff " 'has rendered service of extraordinary and exceptional character, such service as in contemplation of the parties, was not to be compensated for in money, and, as in contemplation of law, cannot be compensated for in money; therefore by no action at law could a plaintiff be restored to his original position. . . .' . . . '. . . These cases usually arise where the service is of some extraordinary nature which cannot be, and in the contemplation of the

parties was never expected to be, paid for in money, as where home ties are broken,' etc." (*Morrison, supra,* 169 Cal. at p. 587, italics omitted; see *Porporato v. Devincenzi, supra,* 261 Cal.App.2d at pp. 675-679 & fn. 2 [discussing cases where plaintiff's rendition of personal services to defendant justified quasi-specific performance of defendant's promise to leave property to plaintiff].)

The *Morrison* court concluded: "Surely there can be no doubt upon the question whether plaintiff had a full and adequate remedy at law. . . . [T]here was nothing extraordinary or peculiar in the nature of the service to be rendered by plaintiff for deceased. At best, he was the assistant manager of the hotel business of deceased conducted at the Western Hotel in Sacramento, and was a faithful and efficient employee of deceased, having his absolute confidence. The services that he was rendering were services that could be, and in the contemplation of the parties were to be, compensated in money. . . . He was to receive fifty thousand dollars in money from the estate of deceased if the latter performed his contract. An ordinary action at law for breach of the contract would bring him the very thing to which he is entitled under the allegations of his complaint—afford him full and adequate relief. In such an action the measure of damages would have been the value of the property agreed to be bequeathed, for that was the amount in which he was damaged by the breach. . . .

"It thus appears that the complaint does not state facts sufficient to entitle plaintiff to any relief, legal or equitable. It fails to show him entitled to any equitable relief for the reason we have just discussed. It fails to show him entitled to recover at law, in view of the want of an allegation showing presentation of his claim to the executors and judge for allowance." (*Morrison, supra,* 169 Cal. at pp. 589-590.)

*Morrison* has withstood the test of time. In *Zellner v. Wassman* (1920) 184 Cal. 80 [193 P. 84] (*Zellner*), the Supreme Court explained: "Agreements to leave property by will often consist of promises to devise real property in return for peculiar personal services, or other consideration . . . . The fact remains, however, that, in actions upon these agreements, as in other actions upon contracts, inadequacy of the legal remedy to compensate for the breach is the keystone of equitable jurisdiction. Since plaintiff relies upon an alleged contract to bequeath a specified sum of money, the case falls within the decision of this court in *Morrison* v. *Land,* 169 Cal. 580 [147 P. 259] where it was said: 'An ordinary action at law for breach of the contract would bring him the very thing to which he is entitled under the allegations of his complaint . . . .' " (*Zellner, supra,* 184 Cal. at p. 84.)

In *Shive v. Barrow* (1948) 88 Cal.App.2d 838 [199 P.2d 693], Division Three of this district discussed the enforceability of contracts to make a will:

"If there is a valid agreement to make a will and the agreement is fair and reasonable and adequately supported by consideration[,] equity will grant a sort of quasi-specific performance by making the party who receives the estate a constructive trustee for the intended beneficiary in accordance with the terms of the agreement. . . .

"Though the estate may be probated and the property distributed accordingly, if there is a valid agreement to make a will which is certain and definite, and founded upon an adequate consideration, the court, in an action by the promisee, will impose a constructive trust upon any particular property in the hands of the individual distributee. . . .

". . . There is a long line of decisions in this state to the effect that the law gives plaintiffs an adequate remedy for breach of the agreement, or for the money advanced and for compensation for the services rendered, and that equity will not grant quasi-specific performance of the agreement when such remedies are available. . . . Equity follows the law and, when the law determines the rights of the respective parties, a court of equity is without power to decree relief which the law denies. . . . Where the law gives a party an adequate remedy by way of an action in damages for breach of contract, or for compensation for the services rendered under it, a court of equity may not grant specific performance of such a contract." (*Shive v. Barrow, supra,* 88 Cal.App.2d at pp. 843-844, citations omitted, citing *Morrison, supra,* 169 Cal. at p. 586; accord, *Chahon v. Schneider* (1953) 117 Cal.App.2d 334, 345-346 [256 P.2d 54], discussing *Morrison, supra,* 169 Cal. 580.)

In *Thayer Plymouth Center, Inc. v. Chrysler Motors Corp.* (1967) 255 Cal.App.2d 300 [63 Cal.Rptr. 148], the court reversed a preliminary injunction, in part because an adequate remedy at law—monetary damages—could be recovered in an action for breach of contract. (*Id.* at p. 306, citing *Morrison, supra,* 169 Cal. at p. 586.) In *Friedman v. Friedman* (1993) 20 Cal.App.4th 876 [24 Cal.Rptr.2d 892], the court reached the same conclusion. (*Id.* at p. 889, citing *Morrison, supra,* 169 Cal. at pp. 586, 589-590.) And in the words of one court, "the question [in *Morrison*] was whether the plaintiff had to show inadequacy of the legal remedy in order to obtain specific performance. The answer was yes." (*Walton v. Walton* (1995) 31 Cal.App.4th 277, 292 [36 Cal.Rptr.2d 901].)

With the foregoing principles in mind, we turn to the facts of this case. We conclude that plaintiff had an adequate legal remedy—a claim for damages—which he lost by failing to file a creditor's claim in his grandmother's probate proceeding. And because plaintiff had an adequate legal

remedy, albeit not properly pursued, he cannot obtain equitable relief in the form of quasi-specific performance of the March 1979 agreement. Last, we discuss a line of cases that, according to plaintiff, permits quasi-specific performance even if an adequate legal remedy exists. We do not read the case law to say any such thing.

## A. *Adequate Legal Remedy*

Plaintiff's case is predicated on his grandmother's alleged breach of the March 1979 agreement, which required her to leave the family home to plaintiff's father and his issue. Plaintiff alleges that his grandmother breached the agreement by changing her will in January 1986, leaving the property to his aunt. In 1999, plaintiff and his aunt served as co-special administrators for the purpose of selling the property, a transaction that plaintiff's grandmother had started before her death. The property was sold and the proceeds were placed in a bank account.

As in *Morrison, supra,* 169 Cal. 580, "[a]n ordinary action at law for breach of the contract would bring [plaintiff] the very thing to which he is entitled under the allegations of his complaint [and would] afford him full and adequate relief." (*Id.* at p. 590.) The plaintiff in *Morrison* sought $50,000 based on the decedent's alleged breach of a contract to bequeath that amount. Here, plaintiff seeks a larger sum. But the bequest is money nonetheless. As in *Morrison,* "[s]urely there can be no doubt upon the question whether plaintiff had a full and adequate remedy at law." (*Morrison, supra,* 169 Cal. at p. 589; accord, *Zellner, supra,* 184 Cal. at p. 84.) Consequently, we cannot say that "the legal remedy, . . . an action for damages, is inadequate." (11 Witkin, Summary of Cal. Law (9th ed. 1990) Equity, § 21, p. 698.)

## B. *Creditor's Claim*

"In an action at law for damages . . . , the plaintiff is a creditor and must file his claim against the estate of the deceased promisor or be forever barred." (*Chahon v. Schneider, supra,* 117 Cal.App.2d at p. 346.) That includes an action for breach of contract based on an agreement to make a specific bequest in a will. (See Prob. Code, §§ 9000-9399, 7000 et seq.; 12 Witkin, Summary of Cal. Law, *supra,* Wills and Probate, § 580, pp. 605-606.)

A party with a remedy at law against a decedent for breach of contract must proceed upon the theory that he or she is a creditor of the deceased, having a claim against the estate, and is subject to the provisions of the

Probate Code requiring the presentation of claims to the executor or administrator. (See Prob. Code, § 9000 et seq.; *Morrison, supra,* 169 Cal. at p. 585.) In the absence of such presentation, an action on the contract is barred. (See Prob. Code, § 9002, subd. (b); *Morrison, supra,* 169 Cal. at p. 585; *Venturi v. Taylor, supra,* 35 Cal.App.4th at pp. 19-20, 24-26.)

■ "[P]robate statutes generally require the filing of claims within a short time known as the nonclaim period. The purpose of the requirement is to give the representative an opportunity to ascertain speedily the obligations against the estate and the method of payment. . . . [¶] . . . [¶] . . . Timely presentation is necessary before the representative is obligated or entitled to pay, and failure in this regard is an absolute bar to enforcement of the claim." (12 Witkin, Summary of Cal. Law, *supra,* Wills and Probate, § 574, pp. 596-597, italics omitted.) This rule is so fundamental that it applies at the pleading stage: "[E]ven if the complaint . . . state[s] facts sufficient to constitute a cause of action at law for damages[,] . . . it would still be insufficient because it does not allege that plaintiff presented a claim for damages . . . against the estate of the deceased." (*Chahon v. Schneider, supra,* 117 Cal.App.2d at p. 346.)

Although plaintiff filed a claim in the probate proceeding to recover sums he had paid his grandmother for her support and maintenance, he did not file a claim alleging breach of the March 1979 agreement. As a result, he cannot maintain a civil action on the latter claim.[1]

C. *Equitable Remedy*

■ "[W]here, as here, the primary right of a party is *legal* in its nature, as distinguished from *equitable,* and one for which the law affords some remedy, as here damages by way of compensation for breach of contract, a proper exercise of the equitable jurisdiction will not give equitable relief in any case where the legal remedy is full and adequate and does complete justice." (*Morrison, supra,* 169 Cal. at p. 586, italics in original; accord, *Walton v. Walton, supra,* 31 Cal.App.4th at p. 292; 5 Witkin, Cal. Procedure (4th ed. 1997) Pleading, § 759, p. 215.)

"[E]quity will not grant quasi-specific performance of [an] agreement when [adequate legal] remedies are available. . . . Where the law gives a

---

[1]In a case involving a bequest of real property—where an action for quasi-specific performance may be proper—it is not clear whether the legatee must file a creditor's claim as a prerequisite to bringing a civil action seeking the imposition of a constructive trust. (See Ross & Moore, Cal. Practice Guide: Probate (The Rutter Group 2001) ¶¶ 15:114.1 to 15:114.2, p. 15-47.) That question is not presented on the facts of this case, nor have the parties raised or addressed it. Neither do we. (See *Interinsurance Exchange v. Collins* (1994) 30 Cal.App.4th 1445, 1448 [37 Cal.Rptr.2d 126]; *Dills v. Redwoods Associates, Ltd.* (1994) 28 Cal.App.4th 888, 890, fn. 1 [33 Cal.Rptr.2d 838].)

party an adequate remedy by way of an action in damages for breach of contract . . . , a court of equity may not grant specific performance of such a contract." (*Shive v. Barrow, supra,* 88 Cal.App.2d at p. 844; accord, *Chahon v. Schneider, supra,* 117 Cal.App.2d at pp. 345-346.)

"[I]f the plaintiff's cause of action is one for which the legal remedy of damages is generally deemed adequate, it does not become inadequate and justify a decree of specific performance merely because the legal remedy has been lost through neglect." (5 Witkin, Cal. Procedure, *supra,* Pleading, § 759, p. 215.) It follows that the trial court erred in granting quasi-specific performance of the March 1979 agreement.

## D. *Defendant's Representative Capacity*

Plaintiff argues that this action has merit because, unlike the breach of contract claim in the original complaint, which was brought against defendant in two capacities, as an individual and as administrator of the estate, the quasi-specific performance claim in the amended pleading was brought against defendant as an individual only. We do not see a meaningful distinction. Neither did the trial court.

The judgment, though rendered on the basis of the amended complaint, expressly recognized defendant in both capacities. It directed her as an individual to hold in trust the proceeds from the sale of the real property. It directed her as administrator of the estate to deliver the proceeds to plaintiff in the separate probate proceeding (*Estate of Wilkison* (Super. Ct. L.A. County, 1999, No. BP055807)).

Further, the oft-stated rule that an adequate legal remedy precludes equitable relief is one of the most firmly established principles in equitable jurisprudence. (*Morrison, supra,* 169 Cal. at p. 586.) That rule, not the posture of the defendant, governs whether quasi-specific performance is appropriate. To hold otherwise would exalt form over substance. (See Civ. Code, § 3528.) Here, in light of the availability of an action for damages, quasi-specific performance was not proper.

In sum, where the breach of an agreement to make a will results in the loss of a monetary bequest, the affected legatee must file a creditor's claim in the probate proceeding and, if unsuccessful there, may file a civil action for damages. Because plaintiff did not file such a claim and sought only money from the estate, this action for quasi-specific performance is barred.

## E. *Quasi-specific Performance as to Real Property*

Plaintiff cites case authority for the proposition that quasi-specific performance can be granted regardless of whether an adequate legal remedy exists.

Not so. Rather, the cases establish that quasi-specific performance may be proper where a bequest of real property is involved—the classic situation where an action at law is deemed inadequate. Plaintiff's position is perhaps best described in *Thompson* v. *Beskeen* (1963) 223 Cal.App.2d 292 [35 Cal.Rptr. 676] (*Thompson*), a decision by the Third District Court of Appeal:

"The beneficiary of an agreement to make a will may seek a remedy which is called 'quasi-specific performance,' so called because the court cannot compel the making of a will and thus gives an equivalent remedy by impressing a constructive trust on the promised property. . . . [In the present case,] defendant urges that plaintiff had an adequate remedy at law by way of an action for money damages and should not have equitable relief by specific performance. This position receives support from a number of California decisions. In effect these decisions hold that unless a plaintiff in an action for breach of a contract to make a will alleges and proves inadequacy of legal remedies, he will be denied specific performance in equity. For example, in *Zellner* v. *Wassman*, 184 Cal. 80, 84 [193 P. 84], the court states: 'The fact remains, however, that in actions upon these agreements, as in other actions upon contracts, inadequacy of the legal remedy to compensate for the breach is the keystone of equitable jurisdiction.' (Other cases adhering to this doctrine are *Morrison* v. *Land*, 169 Cal. 580, 587 [147 P. 259]; *Flood* v. *Templeton*, 148 Cal. 374, 378 [83 P. 148]; *Chahon* v. *Schneider*, 117 Cal.App.2d 334, 335 [256 P.2d 54]; *Murdock* v. *Swanson*, 85 Cal.App.2d 380, 385 [193 P.2d 81]; *De Mattos* v. *McGovern*, 25 Cal.App.2d 429, 431 [77 P.2d 522]; see also *Brown* v. *Superior Court*, 34 Cal.2d 559, 563-564 [212 P.2d 878].)

"Other decisions express the contrary view, that adequacy of damages at law is no impediment. This view is traceable to *Jones* v. *Clark*, 19 Cal.2d 156, 160 [119 P.2d 731], which states: 'Nor is there merit in the contention that plaintiff had an adequate remedy at law. As said in *Wolf* v. *Donahue* (1929) [206 Cal. 213], 220 [273 P. 547]: "It is well settled in this state by numerous decisions that a court of equity will decree specific performance of such an agreement [to dispose of property by will] upon the recognized principles by which it is governed in the exercise of this branch of its jurisdiction." '

"The quoted statement in *Jones* v. *Clark* has since been used as abstract authority to sanction resort to equity in these cases without regard to adequacy of damages at law. (*Goldstein* v. *Hoffman*, 213 Cal.App.2d 803, 815-816 [29 Cal.Rptr. 334]; *Potter* v. *Bland*, 136 Cal.App.2d 125, 134-135 [288 P.2d 569].) This strain of case law does not recognize, disapprove or seek to distinguish the conflicting doctrine emanating from [*Morrison* v.

Land, *supra,* 169 Cal. 580] and similar decisions." (*Thompson, supra,* 223 Cal.App.2d at pp. 294-295, some citations omitted.)

Upon close examination of the cases cited in *Thompson,* we conclude that there is no "contrary view" or "conflicting doctrine." The two primary cases cited—*Jones v. Clark, supra,* 19 Cal.2d 156, and *Wolf v. Donohue, supra,* 206 Cal. 213—are entirely consistent with *Morrison, supra,* 169 Cal. 580. The California Supreme Court has cited its decisions in *Jones* and *Wolf* for the proposition that "[e]quitable relief in the form of 'quasi specific performance' of the contract [to make a will] may be obtained where *the remedy at law is inadequate* and the promisor has failed to make the promised disposition of his will." (*Brown v. Superior Court* (1949) 34 Cal.2d 559, 563-564 [212 P.2d 878], italics added.)

Thus, *Jones* and *Wolf,* as interpreted by the Supreme Court, preclude quasi-specific performance if a legal remedy—an award of damages—is adequate. Both *Jones* and *Wolf*—unlike *Morrison, supra,* 169 Cal. 580—involved a promise to bequeath real property. And "[b]ecause of the historic treatment of land as unique, it is presumed . . . that damages would not adequately compensate for the breach [of an agreement to bequeath real property] . . . ." (*Porporato v. Devincenzi, supra,* 261 Cal.App.2d at p. 677; accord, *Morrison, supra,* 169 Cal. at pp. 586-587; see also Civ. Code, § 3387.) Similarly, the two Court of Appeal decisions cited in *Thompson*—*Goldstein v. Hoffman, supra,* 213 Cal.App.2d 883, and *Potter v. Bland, supra,* 136 Cal.App.2d 125—also involved real property, such that the adequacy of a legal remedy was of no concern.

Three of the cases cited in *Thompson* as expressing the purported "contrary view"—*Jones, Goldstein,* and *Potter*—contain the sentence, "Nor is there merit in the contention that plaintiff had an adequate remedy at law." (*Jones v. Clark, supra,* 19 Cal.2d at p. 160; *Goldstein v. Hoffman, supra,* 213 Cal.App.2d at p. 815; *Potter v. Bland, supra,* 136 Cal.App.2d at p. 134.) If read out of context, that language might suggest that quasi-specific performance is available even if a legal remedy is adequate. On the contrary, in each of those cases, the plaintiff sought to enforce an agreement by which the decedent promised to bequeath real property. As a result, none of the plaintiffs had an adequate remedy at law. The quoted language simply reflects that conclusion; it does not mean that the adequacy of a legal remedy is irrelevant.

Nor are defendant's other cases of any help to him. In *Ludwicki v. Guerin, supra,* 57 Cal.2d 127 (*Ludwicki*), the court held that the statute of limitations on an action seeking quasi-specific performance starts to run upon the

promisor's death. (*Id.* at p. 131.) In reaching that conclusion, the court commented that "*under certain circumstances* equity will give relief equivalent to specific performance by impressing a constructive trust upon the property which decedent had promised to leave to plaintiff. (*Bank of California* v. *Superior Court,* 16 Cal.2d 516, 524 [106 P.2d 879].)" (*Ludwicki, supra,* 57 Cal.2d at p. 130, italics added.)

*Ludwicki* accurately states the law. Quasi-specific performance is appropriate in some but not all cases. Further, *Ludwicki* was premised on the decedent's ownership of real property (*Ludwicki, supra,* 57 Cal.2d at p. 131), thereby permitting an action for quasi-specific performance to impose a constructive trust. (See *Morrison, supra,* 169 Cal. at pp. 586-587.) And the case upon which *Ludwicki* relied, *Bank of California,* also involved an agreement to bequeath real property. (See *Bank of California v. Superior Court, supra,* 16 Cal.2d at pp. 519, 526.) In short, *Ludwicki* reflects the principles announced decades earlier in *Morrison, supra,* 169 Cal. 580.[2]

That brings us to our decision in *Estate of Mullins* (1988) 206 Cal.App.3d 924 [255 Cal.Rptr. 430]. There, we stated: "An action to enforce an oral agreement to make a particular testamentary disposition is generally enforceable. . . . The appropriate action to enforce such a contract is the imposition of a constructive trust." (*Id.* at p. 928, citation omitted.) We did not hold, or even discuss, whether an action to impose a constructive trust is proper if there is an adequate remedy at law. Thus, *Mullins* did not alter the rule that an action seeking damages is required where, as here, there is no real property to convey, and the bequest consists of money. (See *Morrison, supra,* 169 Cal. at pp. 586-587; *Zellner, supra,* 184 Cal. at p. 84.)[3]

█ In closing, we note that the filing of a creditor's claim gives a decedent's personal representative an opportunity to pay the amount sought without resort to dispute resolution proceedings. Even if the claim is denied, the creditor and personal representative may agree to have the matter resolved by procedures for the "summary determination of disputes," namely, submission of the matter to a judge or temporary judge or to binding

---

[2] The same can be said of *Estate of Rolls* (1924) 193 Cal. 594 [226 P. 608] and *Laurance v. Security-First Nat. Bank* (1963) 220 Cal.App.2d 622 [34 Cal.Rptr. 56]. Both cases, which were cited in *Thompson, supra,* 223 Cal.App.2d at page 296, involved agreements to devise real property. A third case, *Pluth v. Smith* (1962) 205 Cal.App.2d 818 [23 Cal.Rptr. 550], also cited in *Thompson* at page 296,·concerned a partnership accounting in which one of the assets was real property.

[3] Plaintiff does not take issue with the selling of the real property. Indeed, he voluntarily agreed to act as co-special administrator with his aunt in order to complete the sale of the property—a transaction that his grandmother had begun before her death and to which plaintiff never objected. As stated, the proceeds from the sale are in a bank account held by the estate.

arbitration. (See Prob. Code, §§ 9620, 9621; Ross & Moore, Cal. Practice Guide: Probate, *supra*, ¶¶ 8:93, 8:115 to 8:125, pp. 8-46, 8-54.1 to 8:58.)

In seeking a summary determination, if the parties opt for judicial resolution, the judge or temporary judge "shall proceed promptly to hear and determine the matter in controversy by summary procedure, without pleadings or discovery." (Prob. Code, § 9620, subd. (a).) If arbitration is chosen, the dispute will be resolved in accordance with the California Arbitration Act (Code Civ. Proc., §§ 1280-1294.2). (See Prob. Code, § 9621.) Both types of summary determinations require advance approval by the trial court. (Prob. Code, §§ 9620, 9621.)

The use of summary procedures in probate matters "is designed to reduce the cost of administration of estates and to ease the court's workload by encouraging disposition of disputes by summary proceedings rather than by litigation." (Cal. Law Revision Com. com., 53A West's Ann. Prob. Code (1991 ed.) foll. § 9620, p. 531.) "The summary determination procedures offer a simplified and cost saving alternative to bringing a lawsuit on creditor claims . . . . For these reasons, [the procedures] should always be considered before commencing litigation. . . . [¶] . . . [And] [o]ften, it is in the best interests of the estate to compromise and settle a disputed claim rather than incur the costs and delay of litigating." (Ross & Moore, Cal. Practice Guide: Probate, *supra*, ¶¶ 8:124.4 to 8:125, p. 8-58, italics omitted.) Our decision today encourages the use of summary procedures.

III

DISPOSITION

The judgment is reversed and the trial court on remand shall enter judgment in favor of defendant. Appellant is entitled to costs on appeal.

Spencer, P. J., and Vogel (Miriam A.), J., concurred.

Respondent's petition for review by the Supreme Court was denied November 13, 2002.