Filed 8/22/16  Estate of Billings CA2/7

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| Estate of AUGUSTUS H. BILLINGS, Deceased. | B264972 |
| | (Los Angeles County Super. Ct. No. BP145418) |
| ERIK WENNERSTRAND, Petitioner and Appellant, v. RICHARD A. BILLINGS, as Executor etc., Objector and Respondent. | |

APPEAL from an order of the Superior Court of Los Angeles County, Maria E. Stratton, Judge.  Reversed and remanded.

Law Offices of H. Michael Soroy, H. Michael Soroy and Kristin A. Ingulsrud for Erik Wennerstrand, Petitioner and Appellant.

Johnson and Associates and Einar Wm. Johnson for Richard A. Billings, as Executor etc., Objector and Respondent.

The surviving shareholder of a close corporation petitioned the probate court to compel enforcement of a stock buy-out agreement he had entered many years earlier with the decedent. The executor of the estate objected, arguing no creditor's claim had been filed in the probate proceedings as required by Probate Code section 9351 and the petition, filed 22 months after the decedent's death, was also barred by the one-year limitations period in Code of Civil Procedure section 366.2. The trial court sustained the executor's objections and denied the petition. We reverse.

## FACTUAL AND PROCEDURAL BACKGROUND

### 1. *The Cabilt Shareholders' Buy-out Agreement*

The underlying facts are undisputed. Cabilt, Inc. was formed in 1968. Although there were other shareholders at the company's inception, by 1981 50 percent of Cabilt stock (450 shares) was owned by Augustus H. Billings and his wife Wilma Billings, as community property, and the other 50 percent (450 shares) by Erik Wennerstrand and his wife Gloria Wennerstrand, as community property. On June 26, 1981 the two couples entered into a reciprocal stock buy-out agreement, the subject of this dispute.

The buy-out agreement appointed Marvin E. Levin as trustee and provided that, concurrently with its execution, all of the Cabilt share certificates would be endorsed in blank by their respective owners and deposited with the trustee "who shall hold them for the purposes of this Agreement." It was further provided the two families would continue to be owners of record of their respective shares and would exercise all rights of ownership "subject only to the terms of this Agreement."

Paragraph 5 of the buy-out agreement, "Purchase of Shares on Death," provided, upon the death of Augustus Billings or Erik Wennerstrand, the survivor "shall purchase from the estate of the deceased Shareholder and/or from the surviving spouse of the deceased Shareholder, all of the decedent's interest in the shares together with all of the surviving spouse's interest in the shares of Cabilt . . . ." Paragraph 5 further provided the deceased shareholder's estate and/or his surviving spouse "shall sell all of the decedent's interest and the surviving spouse's interest in the shares of Cabilt . . . ." Pursuant to

2

paragraph 6, the purchase price for the shares of the deceased shareholder and his surviving spouse "shall be the book value of their shares or the total insurance proceeds payable to the surviving Shareholder by reason of the death, whichever amount is greater."[1] The insurance proceeds referred to $100,000 life insurance policies that Billings and Wennerstrand had each taken out on the other's life. Pursuant to paragraph 3, the trustee named in the agreement was to be identified as beneficiary of each policy.[2]

To effectuate their agreement, the parties provided, "If there is a probate administration, the decedent's personal representative shall apply for and obtain any necessary court approval of confirmation of the sale of the decedent's shares under this Agreement." In addition, Billings and Wennerstrand each agreed "to include in his Will a direction and authorization to his executor to comply with the provisions of this Agreement and to sell his shares in accordance with the terms of this Agreement; however, the failure of any shareholder to do so shall not effect [*sic*] the validity or enforceability of this Agreement."

The agreement provided for modification of the purchase price by amendment in writing and specified it would terminate upon the cessation of Cabilt's business; the bankruptcy, receivership or dissolution of Cabilt; whenever Billings or Wennerstrand ceased to be a shareholder by reason of his death or sale of his shares of the corporation; or "[t]he voluntary agreement of all parties to the terms of this Agreement."

---

[1] The agreement provided specific rules for determining book value, including that real property "shall be taken at the valuation appearing on the corporation's financial statement, without adjustment for the depreciation taken on said assets as shown on the latest financial statement of the corporation."

[2] Additional portions of the agreement, not relevant to this appeal, granted an option to purchase in the event Billings or Wennerstrand wanted to sell his ownership interest in Cabilt during his lifetime. The purchase price under the option provision was the same as specified upon the death of Billings or Wennerstrand.

3

An unexecuted first amendment to the buy-out agreement, dated September 19, 1984, stated Billings and Wennerstrand had purchased new life insurance policies with the face amounts of $150,000 in place of the policies referred to in the original agreement. Wennerstrand alleged in his petition to compel enforcement of the buy-out agreement following Billings's death that the face value of the insurance policy on Billings's life at the time of his death, "plus additions"—that is, the sum to be utilized for the purchase of Billings's shares—was $354,028.35; Levin reported he had received $353,560.50 in death benefits from New York Life Insurance Co. in his role as trustee under the buy-out agreement.

Cabilt purchased real property in Los Angeles County in September 1996. No modifications to the buy-out agreement were made after that acquisition. The improved real property was Cabilt's principal asset at the time of Billings's death.

2. *The Death of Augustus Billings and the Dispute over the Buy-out Agreement*

Augustus Billings died on January 7, 2013. (Both Wilma Billings and Gloria Wennerstrand had passed away prior to his death.) His son Richard A. Billings was appointed executor of the estate on November 5, 2013. The sole asset of the estate was the 450 shares of Cabilt stock Billings had owned at the time of his death. According to Wennerstrand, the book value of a 50 percent ownership interest in Cabilt, utilizing the acquisition price of the company's real property, rather than its fair market value as of the date of death, was $290,757.

Levin and counsel for Billings's estate, Robert Whitesides, communicated following Billings's death. In a June 11, 2013 letter Levin wrote that Billings's stock was to be sold to Wennerstrand under the buy-out agreement for a sum equal to the life insurance proceeds or the book value of the shares. Levin anticipated that the life insurance proceeds would be the greater amount (and noted that the improved real property was to be valued at its original cost). In a letter dated August 29, 2013 Levin acknowledged that a petition for probate of Billings's estate had been prepared and would

4

soon be filed and stated he intended to pay all of the insurance proceeds to the estate, once opened, in full satisfaction of the estate's interest in the Cabilt stock.

On February 11, 2014 Whitesides wrote Levin that the probate had been opened through the filing of a probate petition on September 23, 2013 and an order for probate had been entered with letters testamentary issued appointing Richard A. Billings as executor on November 5, 2013. Whitesides disputed the validity of the buy-out agreement on several grounds and urged Levin to turn over Billings's shares to the estate. On April 21, 2014 counsel for Wennerstrand wrote Whitesides disagreeing with the various legal arguments Whitesides had raised concerning the unenforceability of the buy-out agreement. The lawyers continued their debate throughout the summer with no resolution of the dispute.

3. *The Probate Court Proceedings*

On November 21, 2014 Wennerstrand filed his petition in the probate court to enforce the buy-out agreement. Levin, although agreeing with Wennerstrand's position regarding the buy-out agreement, had declined to distribute the insurance proceeds to the estate and Billings's stock to Wennerstrand absent a court order; accordingly, Wennerstrand named both Richard A. Billings, as executor, and Levin, as trustee, as respondents in the petition. In response Richard A. Billings, as executor, filed a petition for recovery of corporate stock at full value on January 7, 2015 and objections to Wennerstrand's petition on January 9, 2015.

In his objections the executor argued Wennerstrand's contract claim was barred by Probate Code sections 9002, subdivision (b), 9100, subdivision (a), and 9351, which require a creditor to file a claim against the estate within four months after the date letters are first issued to a general personal representative, and Code of Civil Procedure section 366.2, which establishes a one-year-after-death limitations period for a cause of action against a decedent that survives his or her death. In the alternative the executor argued, even if Wennerstrand's claim was not time-barred, the buy-out agreement was invalid or unenforceable based on the various legal arguments enumerated in the

5

executor's petition for recovery of corporate stock.[3]  The executor suggested, "[i]n the interest of judicial economy and efficiency," if Wennerstrand's petition was not dismissed as time-barred, the proceedings on both petition should be consolidated and heard together.

At a hearing on January 20, 2015 the probate court questioned whether Wennerstrand's and the executor's petitions were properly before it, indicating its belief the matter involved a contract dispute that was properly heard in a civil department.  At the court's invitation the executor briefed the issue, arguing the probate court had jurisdiction but asserting Wennerstand's petition should be denied or stricken for the reasons set forth in his objections.  Wennerstrand did not file a brief but at the continued hearing on April 22, 2015 agreed with the executor that jurisdiction was proper in the probate court, adding, "at this point, if you do want to transfer it to civil, I don't really care.  I just want to be able to move forward."

The court took the matter under submission.  In a minute order issued later that day the court denied Wennerstrand's petition with prejudice, stating, "The objections filed January 9, 2015, by Richard Billings as Executor of the Estate of Augustus Billings are sustained."  The court also scheduled the executor's petition for recovery of corporate stock for a trial setting conference.

Wennerstrand filed a timely notice of appeal.

**DISCUSSION**

1.  *Standard of Review*

The probate court's denial with prejudice and dismissal of Wennerstrand's petition, based solely on the allegations in the petition itself and the executor's objections, was in the nature of a dismissal following an order sustaining a demurrer without leave to amend.  As both parties agree, our review is de novo.  (See *Loeffler v. Target Corp*. (2014) 58 Cal.4th 1081, 1100; *Gilkyson v. Disney Enterprises, Inc*. (2016)

---

[3]      The executor's objections recited his petition for recovery of corporate stock, which was attached as an exhibit, and "incorporated herein by this reference."

6

244 Cal.App.4th 1336, 1340; see also *Aryeh v. Canon Business Solutions, Inc*. (2013) 55 Cal.4th 1185, 1191 [application of a statute of limitations based on facts alleged in a complaint or petition is a legal question subject to de novo review].)

2. *Governing Statutes*

The executor made a two-pronged challenge to the timeliness of Wennerstrand's petition to enforce the buy-out agreement, arguing Wennerstrand had failed to file a creditor's claim within the time specified in the Probate Code and failed to assert his claim within the one-year-after-death limitations period provided by Code of Civil Procedure section 366.2 for commencing a cause of action that survives the defendant's death. In this court the executor also relies on the one-year-after-death limitations period in Code of Civil Procedure section 366.3 for pursuing a claim that arises from a promise or agreement with a decedent to distribution from his or her estate.

As relevant to these arguments, Probate Code section 9351 provides, "An action may not be commenced against a decedent's personal representative on a cause of action against the decedent unless a claim is first filed as provided in this part and the claim is rejected in whole or in part." Probate Code section 9000, subdivision (a), provides, "'Claim' means a demand for payment for any of the following, whether due, not due, accrued or not accrued, or contingent, and whether liquidated or unliquidated: [¶] (1) Liability of the decedent, whether arising in contract, tort, or otherwise." Section 9000, subdivision (b), explains, "'Claim' does not include a dispute regarding title of a decedent to specific property alleged to be included in the decedent's estate." Section 9000, subdivision (c), defines "creditor" to mean "a person who may have a claim against estate property."

Probate Code section 9100, which specifies the time limits for filing a creditor's claim, provides in part, "(a) A creditor shall file a claim before expiration of the later of the following times: [¶] (1) Four months after the date letters are first issued to a general personal representative. [¶] (2) Sixty days after the date notice of administration is mailed or personally delivered to the creditor. . . ." Probate Code section 9002,

7

subdivision (b), states, except as otherwise provided by statute, "A claim that is not filed as provided in this part is barred."

Code of Civil Procedure section 366.2, subdivision (a), provides, "If a person against whom an action may be brought on a liability of the person, whether arising in contract, tort, or otherwise, and whether accrued or not accrued, dies before the expiration of the applicable limitations period, and the cause of action survives, an action may be commenced within one year after the date of death, and the limitations period that would have been applicable does not apply." Code of Civil Procedure section 366.3, subdivision (a), adopted by the Legislature in 2000, similarly provides, "If a person has a claim that arises from a promise or agreement with a decedent to distribution from an estate or trust or under another instrument, whether the promise or agreement was made orally or in writing, an action to enforce the claim to distribution may be commenced within one year after the date of death, and the limitations period that would have been applicable does not apply."[4]

Code of Civil Procedure section 337, which Wennerstrand contends governs his petition to enforce the buy-out agreement, provides an action "upon any contract, obligation or liability founded upon an instrument in writing" must be commenced within four years of the date of accrual. (See Code Civ. Proc., § 312; *Aryeh v. Canon Business Solutions, Inc.*, *supra*, 55 Cal.4th at p. 1191 ["The limitations period, the period in which a plaintiff must bring suit or be barred, runs from the moment a claim accrues. [Citations.] Traditionally, at common law, a 'cause of action accrues "when [it] is complete with all of its elements"—those elements being wrongdoing, harm, and causation.' [Citation.] This is the 'last element' accrual rule: ordinarily, the statute of

---

[4]     In *Embree v. Embree* (2004) 125 Cal.App.4th 487, 492, footnote 4, this court examined the legislative history of Code of Civil Procedure section 366.3 and held it established a mandatory one-year limitations period for breach of a covenant-to-will agreement notwithstanding the Legislature's use of "may," as opposed to "shall" or "must." *Estate of Ziegler* (2010) 187 Cal.App.4th 1357, 1364 also quoted the relevant legislative history and reached the same conclusion.

limitations runs from 'the occurrence of the last element essential to the cause of action.'"].)

   3. *Wennerstrand's Petition Is Not Time-barred*

    a. *Wennerstrand was not required to file a creditor's claim*

  Wennerstrand's petition prays for an order enforcing the terms of the buy-out agreement and directing the executor to permit the trustee to transfer ownership of the Cabilt stock beneficially owned by Augustus Billings at the time of his death. To the extent the Cabilt shares passed to Billings's estate, as the executor insists, Wennerstrand satisfies Probate Code section 9000, subdivision (c)'s definition of a "creditor" as "a person who may have a claim against estate property." However, notwithstanding the executor's attempt to reformulate the purportedly "true nature" of the petition, Wennerstrand has not made a demand for payment. Rather, he is seeking instructions resolving a "dispute regarding title of a decedent to specific property alleged [by the executor Richard Billings] to be included in the decedent's estate"—relief expressly defined by section 9000, subdivision (b), as not included within the definition of a creditor's "claim" and not subject to section 9100's claim-filing requirement.

  *Wilkison v. Wiederkehr* (2002) 101 Cal.App.4th 822, quoted at length by the executor, does not require a contrary result. In *Wilkison* several of plaintiff's relatives had signed an agreement obligating each of them to make a will leaving the family home to plaintiff's father, which, if honored, would have resulted in the home going to plaintiff. Instead, plaintiff's grandmother changed her will shortly before her death, so the home went to plaintiff's aunt. The home was sold, and the proceeds placed in a bank account. (*Id*. at p. 825.) Plaintiff sued his aunt, alleging a cause of action for quasi-specific performance, seeking to impose a constructive trust on the proceeds from the sale of the home. The court of appeal held plaintiff could not maintain the quasi-equitable action because he had an adequate remedy at law—a claim based on his grandmother's breach of the written agreement to leave the property to his father. (*Ibid*.) Because plaintiff did

9

not file the requisite creditor's claim in his grandmother's probate proceeding, the civil action for damages was similarly barred. (*Id*. at p. 828.)

In explaining its ruling the *Wilkison* court relied on the Supreme Court's decision in *Morrison v. Land* (1915) 169 Cal. 580, which had held a complaint seeking quasi-specific performance of the decedent's agreement to leave plaintiff $50,000 in his will as compensation for his services as a hotel's chief clerk and bookkeeper was properly dismissed for failure to file a timely creditor's claim. (See *Wilkinson v. Wiederkehr*, *supra*, 101 Cal.App.4th at pp. 829-830.) The creditor's claim was required, the *Morrison* Court ruled, because the legal remedy of damages (payment of $50,000) was "'full and adequate and does complete justice,'" so the action was not properly subject to the court's equitable jurisdiction. (*Id.* at p. 830.) In *Wilkison*, as in *Morrison*, although the lawsuit was framed as a quasi-equitable proceeding to enforce a contract to make a will, the only relief that could be obtained was a monetary award: "[P]laintiff had an adequate legal remedy—a claim for damages—which he lost by failing to file a creditor's claim in his grandmother's probate proceeding. And because plaintiff had an adequate legal remedy, albeit not properly pursued, he cannot obtain equitable relief in the form of quasi-specific performance of the March 1979 agreement." (*Wilkinson*, at pp. 833-834.)

Here, Wennerstrand does not seek damages, specific performance of a promise to bequeath an amount of money or imposition of a constructive trust on the proceeds obtained from the sale of property, but enforcement of an agreement that will provide him with full ownership of the stock of Cabilt, a closely held corporation, by acquisition of the outstanding 50 percent of company shares formerly held by Billings. Specific performance of such a contract is a well-established equitable power. (See, e.g., *Capaldi v. Levy* (1969) 1 Cal.App.3d 274, 281 ["[t]he propriety of specific enforcement of contracts to sell or convey unique items of personal property such as shares of stock in closely held corporations which are not traded in the market and which have no established market value has long been recognized"]; see also *Butler v. Attwood* (6th Cir. 1966) 369 F.2d 811, 815 [affirming district court's ruling that equitable remedy of

10

specific performance is available to enforce buy-sell agreement "'since the stock is closely held and is not available on the market and is therefore unique'"].)

Moreover, whether analogized to an action to quiet title to personal property (see Code Civ. Proc., § 760.020, subd. (a)) or for declaratory relief to determine who now owns Augustus Billings's 450 shares of Cabilt stock, Wennerstrand's lawsuit for specific performance of the buy-sell agreement is equitable in nature. (See *Caira v. Offner* (2005) 126 Cal.App.4th 12, 26-27 [gist of dispute among siblings and the estate of their father over ownership of a family company was equitable]; *Walton v. Walton* (1995) 31 Cal.App.4th 277, 289 [action seeking specific performance of oral agreement to devise property by will is equitable in nature]; *Hartman v. Burford* (1966) 242 Cal.App.2d 268, 270 [same].) In addition, Cabilt's principal asset is improved real property; the dispute between Wennerstrand and the estate over ownership of Billings's shares and control of the company is essentially about that property and who is entitled to exploit it. Yet as both the Supreme Court in *Morrison* and the Court of Appeal in *Wilkison* recognized, "the legal remedy of damages is generally inadequate in real property disputes: 'Courts of equity have established the . . . rule that in general the legal remedy of damages is inadequate in all agreements for the sale or letting of land . . . .'" (*Wilkison v. Wiederkehr*, *supra*, 101 Cal.App.4th at p. 830, quoting *Morrison v. Land*, *supra*, 169 Cal. at pp. 586-587.)

In sum, whatever other defenses the executor may proffer, Wennerstrand's failure to file a creditor's claim within the time limit specified by Probate Code section 9000, subdivision (a)(1), or at all, does not bar his petition to enforce the buy-out agreement.

> b. *Code of Civil Procedure sections 366.2 and 366.3 do not apply to a stock buy-out agreement triggered by the death of one of the shareholders*

Because Wennerstrand's petition to enforce the buy-out agreement was not filed until November 14, 2014, more than 22 months after Billings's death, the executor contends, and the probate court appears to have ruled, the petition was untimely under Code of Civil Procedure sections 366.2 or 366.3 or both, which require a cause of action that survives the decedent's death or a claim arising from a promise or agreement to

make a distribution from a decedent's estate be filed within one year of the date of death. As with his flawed position regarding Wennerstrand's failure to file a creditor's claim, the executor's argument rests on an inaccurate and misleading reformulation of the substance of Wennerstrand's petition: The executor asserts Wennerstrand's claim is properly viewed as one for breach by Billings of his promise in the buy-out agreement to include in his will a direction to his executor to comply with the provisions of the agreement—a contract claim that was personal to Billings and survived his death within the meaning of section 366.2 or an agreement to provide for a distribution within the ambit of section 366.3.

The executor's misrepresentation of Wennerstrand's claim notwithstanding, Wennerstrand does not assert a right to a distribution of any sort from Billings's estate, no matter how broadly the term "distribution" in Code of Civil Procedure section 366.3 may be read. (See *Estate of Ziegler* (2010) 187 Cal.App.4th 1357, 1365 [although "one would not normally refer to the award of specific property to a person who is claiming it as the true owner, adversely to the decedent, as a 'distribution,'" an action to enforce a present promise to transfer property upon the promisor's death is indistinguishable from one to enforce a contract to make a will and is subject to the limitations period in Code of Civil Procedure section 366.3].) Rather than a distribution of money or property, Wennerstrand seeks an order from the probate court authorizing the trustee of the buy-out agreement to convey to him the endorsed shares of stock, beneficially owned by Augustus Billings but held by the trustee, and to release to the executor the proceeds of the life insurance policies on Billings's life as payment for the stock. Nor is Wennerstrand seeking a remedy for Billings's failure to include the required direction to his executor in his will. To the contrary, as discussed, Wennerstrand and Billings expressly agreed the failure to do so would not affect the validity or enforceability of the buy-out agreement; Wennerstrand relies on that savings provision to buttress his right to

12

enforce the buy-out agreement itself.[5] Thus, this court's decision in *Embree v. Embree* (2004) 126 Cal.App.4th 487, cited by the executor, which held a claim for breach of the covenant-to-will provision in a marital settlement agreement was barred by Code of Civil Procedure section 366.3, is simply inapposite.

Similarly, Code of Civil Procedure section 366.2, which applies to any cause of action "on a liability of the person," accrued or unaccrued, that survives the death of that person, is not implicated by Wennerstrand's petition to enforce the buy-out agreement. By its express terms, the rights created and obligations imposed by paragraph 5 of the buy-out agreement, "Purchase of Shares on Death," arise only when either Wennerstrand or Billings has died and could not be personally enforced against either of them prior to his death. The "survivor" of the two men had the right and obligation to purchase the other's shares; there could be no "survivor" until one of the men was dead. Similarly, it is the deceased shareholder's estate that is obligated (or entitled) to sell the shares and receive the contractually defined purchase price; again, to state the obvious, there is no estate until one of the two has died. In short, no accrued cause of action existed against Augustus Billings before his death; no unaccrued cause of action against him would have subsequently accrued had he lived; thus, there could be no cause of action under the purchase-of-shares-at-death provisions of the buy-out agreement against Billings personally that survived his death.[6] (See *Shewry v. Begil* (2005) 128 Cal.App.4th 639, 644 ["[O]n its face, section 366.2 applies to claims that could have been brought against the decedent had he or she lived. Thus, section 366.2 is inapplicable to an action, brought

---

[5] Whether that savings clause ultimately preserves Wennerstrand's rights under the agreement is not before us.

[6] Code of Civil Procedure section 377.20 provides, in part, a cause of action against a person is not lost by the person's death "even though a loss or damage occurs simultaneously with or after the death of a person who would have been liable if the person's death had not preceded or occurred simultaneously with the loss or damage." (*Id.*, § 377.20, subd. (b).)

13

on a statutory liability that arose only upon the decedent's death and which could not have been brought against the decedent."].)

Phrased slightly differently, the cause of action asserted in Wennerstrand's petition had no existence whatsoever until Billings's death triggered the provisions of the buy-out agreement and it became necessary to enforce them. The four-year statute of limitations found in Code of Civil Procedure section 337, subdivision 1, for an action upon a contract governs here, not the one-year-after-death provision of section 366.2.

4. *The Executor's Objections to the Validity and Enforceability of the Buy-out Agreement Are Properly Determined in the Probate Court Together with His Petition for Recovery of Corporate Stock*

As discussed, in addition to arguing Wennerstrand's petition on its face was time-barred, the executor's objections to the petition to enforce the buy-out agreement incorporated by reference the factual and legal contentions regarding the validity and enforceability of the agreement that were presented in his petition for recovery of corporate stock. Among his arguments the executor asserted trustee Levin, who drafted the agreement, had an ongoing conflict of interest that made the buy-out agreement void or voidable; Augustus Billings signed the agreement as a result of mistake, fraud or undue influence; and the agreement had terminated prior to Billings's death because Cabilt's business as it existed in 1981 had ceased.

Concurrently with its April 22, 2015 minute order denying Wennerstrand's petition, the probate court scheduled the executor's petition for a trial setting conference, implicitly recognizing those additional grounds for invalidating the buy-out agreement could not be decided on the bare pleadings submitted by the parties. Indeed, the executor had urged the court, if it did not dismiss Wennerstrand's petition as time-barred, to hear both petitions together. In addition, the only issue actually addressed at the April 22, 2015 hearing was the probate court's jurisdiction to hear the petitions. Under these circumstances we necessarily understand the probate court's order sustaining the executor's objections to refer only to the argument Wennerstrand had failed to file a claim in probate within the applicable post-death limitations period. All other issues

14

regarding the validity and enforceability of the buy-out agreement remain for determination by the probate court.

## DISPOSITION

The order denying the petition is reversed and the cause remanded for further proceedings to determine all remaining issues regarding the validity and enforcement of the buy-out agreement and to make all necessary orders.  Wennerstrand is to recover his costs on appeal.



PERLUSS, P. J.


We concur:


ZELON, J.


SEGAL, J.


15