[No. E048555. Fourth Dist., Div. Two. Aug. 31, 2010.]

Estate of PAUL ZIEGLER, Deceased.
RICHARD N. LARSEN, as Public Administrator, etc., Petitioner and Respondent, v.
W.C. COX AND COMPANY, Objector and Appellant;
RICHARD H. LaQUE, Claimant and Respondent.

**[CERTIFIED FOR PARTIAL PUBLICATION*]**

---

*Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, this opinion is certified for publication with the exception of part III.

**COUNSEL**

Law Office of Layne A. Bartholomew and Layne A. Bartholomew for Objector and Appellant.

No appearance for Petitioner and Respondent.

Ward & Ward, Alexandra S. Ward; James B. Church & Associates and Mark J. Andrew Flory for Claimant and Respondent.

**OPINION**

**RICHLI, J.**—The statute of limitations serves noble public policies. It " 'promote[s] justice by preventing surprises through the revival of claims that have been allowed to slumber until evidence has been lost, memories have faded, and witnesses have disappeared.' [Citations.]" (*Parra v. City and County of San Francisco* (2006) 144 Cal.App.4th 977, 998 [50 Cal.Rptr.3d 822].) Its operation in particular cases, however, can be sadly inequitable.

This is just such a case. The equities in favor of claimant Richard H. LaQue could hardly be more compelling. LaQue and his wife provided food, care, and companionship to their neighbor, Paul Ziegler, when Ziegler was sick and alone. At first, they did so out of the goodness of their hearts. Eventually, however, a grateful Ziegler insisted on entering into a written agreement—the validity of which is unquestioned—that in consideration of continued care, LaQue would receive Ziegler's home upon Ziegler's death.

On the other hand, the equities in favor of appellant W.C. Cox and Company (Cox) are slim to none. Cox is a soulless[1] corporation in the business of locating missing heirs. It is acting as the attorney in fact for nine residents of Germany who claim to be Ziegler's heirs.

After Ziegler died without a will, LaQue simply moved into Ziegler's former home, unopposed. He did not see the need to file any claim in connection with Ziegler's estate until about a year and three weeks after Ziegler's death.

Alas for LaQue, Code of Civil Procedure section 366.3, subdivision (a) provides: "If a person has a claim that arises from a promise or agreement with a decedent to distribution from an estate or trust or under another

---

[1] We use the word "soulless" literally; we do not mean to imply that Cox's employees are not caring people or that they do not provide a valuable service.

instrument, . . . an action to enforce the claim to distribution may be commenced within *one year after the date of death*, and the limitations period that would have been applicable does not apply." (Italics added.)

The trial court held that LaQue's claim was not barred by the statute of limitations. Cox appeals.

LaQue argues that Code of Civil Procedure section 366.3 does not apply because the written agreement is not a promise to make a future distribution from Ziegler's estate; rather, it is a present promise to convey Ziegler's house, albeit one that could not have been performed until after Ziegler's death. We will conclude that this is a distinction without a difference. Accordingly, we will reverse.

## I

## FACTUAL BACKGROUND

Ziegler was a retired school teacher. He owned and lived in the house he had grown up in, in Colton. He suffered from asthma.

In 2000, Richard and Irma LaQue rented the house next door. About six months later, LaQue started doing Ziegler's plumbing, mowing his lawn, and doing other handyman work. Ziegler told the LaQues he had no relatives. He had friends who visited him, but only once or twice a year.

Starting in 2003 or 2004, Ziegler repeatedly told the LaQues that he wanted them to have his house. He explained that "he wanted somebody that's going to take care of the house that his mom and dad worked so hard for." He did not want it to go to the government.

After a bout of flu in June 2005, Ziegler stopped taking his daily walk. The LaQues began bringing him meals and making sure he ate. Irma started cleaning his house twice a week.

In mid-October 2005, Ziegler was hospitalized. LaQue visited him every day. On November 1, 2005, Ziegler came home from the hospital. However, he stopped going out of his house at all. At his request, the LaQues started helping him out even more. He specifically asked them to continue to bring him meals. They helped him get dressed. They prepared his bath for him. They also ran errands for him.

On November 10, 2005, Ziegler asked LaQue to come over, along with Irma (who was to bring paper and a pen) and anyone else who was at his

house. LaQue brought Victor Oga, his daughter's fiancé. Ziegler told them all that "he wanted Richard to have the house." He then dictated a document to Irma. It provided:

"November 10, 2005

"2:15 p.m.

"I Paul Daniel Ziegler home owner of 820 E. G St in Colton, California 92324, am signing over my home and property to Richard H. LaQue Sr.

"This written agreement between myself and Richard is for the exchange of my care and daily meals. This written note will be immediately active if and when I no longer can reside in my home due to death." (The Agreement.)

Ziegler read the Agreement and then signed it. He had LaQue sign it. He also had Oga sign it as witness.

After that, the LaQues "started giving [Ziegler] more care . . . ." They checked on him daily and brought him dinner (the only meal he wanted) every day. They were "prepared to take care of [him] for months or years if need be."

On November 14 or 15, 2005, when LaQue went over to check on him, Ziegler called out through the bathroom window that he was all right and did not need more food. The next day, when LaQue went to check on him again, Ziegler "tried to do the same thing . . . ." LaQue entered the house and found him lying in the bathroom, unable to move from the waist down. LaQue had Irma call an ambulance; Ziegler was taken to the hospital. Once again, LaQue visited him every day.

The LaQues had noticed a "heavy odor" in Ziegler's house. They were concerned that it might be contributing to his asthma. Accordingly, while he was in the hospital, they cleaned out dust and mildew. They replaced the old shag carpet with linoleum, replaced the curtains, repainted the living room, and put up a Christmas tree. They checked for gas leaks; they discovered that an old refrigerator was leaking carbon monoxide, and they removed it.

LaQue realized that Ziegler had relatives only when he found some unopened year-old Christmas cards from them. He asked Ziegler if he should notify them that he was in the hospital, but Ziegler said no.

On January 15, 2006, Ziegler died in the hospital. He was 60 years old. LaQue took it upon himself to notify Ziegler's relatives. He tried to handle

the funeral arrangements but could not, because he was not a family member. He did manage to find where Ziegler's mother was buried; he requested that Ziegler's remains be buried next to her and arranged for a headstone.

In March 2006, in reliance on the Agreement, the LaQues moved into Ziegler's home.

## II

## PROCEDURAL BACKGROUND

In September 2006, the public administrator filed a petition to probate Ziegler's estate. In October 2006, the trial court appointed him as the administrator of the estate (the Administrator). Nine German nationals who claim to be Ziegler's first cousins (or descendents of his first cousins) through his maternal grandparents appeared through Cox as their attorney in fact.[2]

On February 9, 2007, LaQue filed a creditor's claim for $9,556, representing the value of his services on a quantum meruit theory. On February 13, 2007, LaQue filed an alternative creditor's claim for $318,600, the estimated value of the house, representing the value of his services on a contract theory.

In May 2007, the Administrator filed a petition for instructions (Prob. Code, § 9611), seeking an order that LaQue's creditor's claim for the value of the house be allowed (subject to prior creditor's claims and costs of administration). Cox filed objections to the Administrator's petition, arguing that LaQue's claims were barred by the statute of limitations.[3]

In June 2007, Cox filed a petition to determine persons entitled to distribution of the estate (Prob. Code, § 11700), seeking an order that the estate should be distributed to Ziegler's intestate heirs.[4]

In September 2007, LaQue filed a petition to transfer property of the estate (Prob. Code, § 850 et seq.), seeking an order that the Administrator transfer the house to him. Cox filed objections to LaQue's petition, arguing again that LaQue's claims were barred by the statute of limitations.

The trial court held a combined trial on all three petitions. It then issued a "Ruling on Submitted Matter" (capitalization omitted) in which it ruled that LaQue's claim to the house was not barred:

---

[2] No party has raised any issue as to Cox's standing.

[3] In its objections, Cox relied solely on Code of Civil Procedure section 366.2. In its trial brief, however, it additionally relied on Code of Civil Procedure section 366.3.

[4] Ziegler had five paternal heirs, who were related to him even more distantly than the nine maternal heirs represented by Cox. The paternal heirs supported Cox's position in the trial court but have not appealed.

"The contract could only be performed by Ziegler upon his death. His administrator is prepared to perform on the contract.

". . . The contract was never breached. The statute would run from the breach.

"LaQue has petitioned the court to request the Estate to convey legal title to the real property to Petitioner. Petitioner is entitled to such an order."

### III

### APPEALABILITY*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

### IV

### LaQUE'S CLAIM TO THE HOUSE IS TIME-BARRED UNDER CODE OF CIVIL PROCEDURE SECTION 366.3

The relevant facts are undisputed. The key issue is the interpretation and application of Code of Civil Procedure section 366.3. "Questions of statutory interpretation, and the applicability of a statutory standard to undisputed facts, present questions of law, which we review de novo. [Citation.]" (*Jenkins v. County of Riverside* (2006) 138 Cal.App.4th 593, 604 [41 Cal.Rptr.3d 686] [Fourth Dist., Div. Two].)

Code of Civil Procedure section 366.3, as relevant here, provides:

"(a) If a person has a claim that arises from a promise or agreement with a decedent to distribution from an estate or trust or under another instrument, whether the promise or agreement was made orally or in writing, an action to enforce the claim to distribution may be commenced within one year after the date of death, and the limitations period that would have been applicable does not apply.

"(b) The limitations period provided in this section for commencement of an action shall not be tolled or extended for any reason[, subject to exceptions not relevant here] . . . ."

■ The trial court reasoned that the applicable statute of limitations would run from breach of the contract and that the contract had not been

---
*See footnote, *ante*, page 1357.

breached.[5] It is unclear exactly *which* statute of limitations the trial court had in mind. If it was referring to Code of Civil Procedure section 366.3, clearly it erred; that statute runs from the date of death, not the date on which the cause of action accrues.

LaQue, evidently recognizing this, urges us to treat the trial court's ruling as an implied finding that Code of Civil Procedure section 366.3 did not apply. Even if so, however, the trial court still erred, because, for the reasons we will state, Code of Civil Procedure section 366.3 *did* apply.

According to the legislative history of this section, the Legislature was concerned that existing law did "not provide a uniform statute of limitations for claims arising from a contract to make a will or other promise or agreement with a decedent to a distribution from an estate or trust." (Assem. Com. on Judiciary, Analysis of Assem. Bill No. 1491 (1999–2000 Reg. Sess.) as amended Jan. 3, 2000, p. 3.)[6] It was advised that "[c]urrent law has an uncertain statute of limitations in regard to equitable and contractual claims to distribution of estates. In some cases, the statute may run three years from discovery of the action or four years under a contract theory." (Assem. Com. on Judiciary, Analysis of Assem. Bill No. 1491 (1999–2000 Reg. Sess.) as amended Jan. 3, 2000, p. 4.) Accordingly, Code of Civil Procedure section 366.3 would "establish[] a one-year statute of limitations for the enforcement of these claims . . . ." (Assem. Com. on Judiciary, Analysis of Assem. Bill No. 1491, *supra*, at p. 4.)

The Legislature was also told that: "The use of the one-year-from-date-of-death statute of limitations is important to the administration of estates and trusts since most are distributed by 18 months after the date of death. Allowing a claim to be commenced against distributees of an estate or trust or other instrument after a year from the date of death would bring hardship to beneficiaries and administrators alike, and would frustrate the policy in favor of the early closing and distribution of estates, proponents state. Using the same statute of limitations for all claims against the estate would also be more convenient for the fiduciaries administering estates." (Sen. Com. on Judiciary, Analysis of Assem. Bill No. 1491 (1999–2000 Reg. Sess.) as amended Mar. 23, 2000, pp. 11–12.)[7]

---

[5] It is conceivable that a personal representative's indications that he or she intends to perform a decedent's contract could rise to the level of an estoppel to assert the statute of limitations. LaQue has not asserted such an estoppel.

[6] (Available at <http://www.leginfo.ca.gov/pub/99-00/bill/asm/ab_1451-1500/ab_1491_cfa_20000112_101432_asm_comm.html> [as of Aug. 31, 2010].)

[7] (Available at <http://www.leginfo.ca.gov/pub/99-00/bill/asm/ab_1451-1500/ab_1491_cfa_20000330_113714_sen_comm.html> [as of Aug. 31, 2010].)

■ Code of Civil Procedure section 366.3 has been construed to "reach any action predicated upon the decedent's agreement to distribute estate or trust property in a specified manner." (*Ferraro v. Camarlinghi* (2008) 161 Cal.App.4th 509, 555 [75 Cal.Rptr.3d 19].) Specifically, it has been held to apply even to fraud and unjust enrichment claims, as long as they are "predicated on a decedent's promise to make specified distributions upon his death." (*Ibid.*) Moreover, it has been held to apply to claims based on a contract to leave certain property by will, even when the claimant is seeking only damages for breach of the contract and is not seeking the property itself. (*Stewart v. Seward* (2007) 148 Cal.App.4th 1513, 1521–1523 [56 Cal.Rptr.3d 651].)

It could be argued that LaQue is not claiming a "distribution."[8] "Distribution," when used as a term of art in probate law, means "the process of dividing an estate *after* realizing its movable assets and paying out of them its debts and other claims against the estate." (Black's Law Dict. (8th ed. 2004) p. 508, col. 2, italics added.) In other words, it refers to the disbursement of assets to heirs or beneficiaries. (See, e.g., Ross, Cal. Practice Guide: Probate (The Rutter Group 2009) ¶ 15:386, p. 15-105 (rev. # 1, 2006) [petition to determine distribution rights, formerly known as petition to determine heirship, is used "to resolve disputes over who is entitled to succeed to the property of a testate or intestate decedent"].) One would not normally refer to the payment of a creditor's claim as a "distribution." Likewise, one would not normally refer to the award of specific property to a person who is claiming it as the true owner, adversely to the decedent, as a "distribution."

■ Once again, however, the Legislature clearly intended Code of Civil Procedure section 366.3 to apply, at a minimum, to a claim based on a contract to make a will. The Legislature even referred broadly to all "equitable and contractual claims to distribution of estates." (Assem. Com. on Judiciary, Analysis of Assem. Bill No. 1491, *supra*, at p. 4.) We may assume, without deciding, that a claim based on a contract to make a will is either a creditor's claim or a claim to specific property and hence is not a claim for a "distribution" in the technical sense. (See *Wilkison v. Wiederkehr* (2002) 101 Cal.App.4th 822, 833–834 [124 Cal.Rptr.2d 631]; but see *Stewart v. Seward, supra,* 148 Cal.App.4th at p. 1515.) Even if so, it is a claim for a "distribution" in the sense that the Legislature intended.

And LaQue's claim here is indistinguishable from a claim on a contract to make a will. The Agreement was a promise to transfer property upon death. It could be performed only after death, by the decedent's personal representative, by conveying property that otherwise belonged to the estate.

---

[8] LaQue himself has never raised this particular argument.

LaQue argues that his claim "is not based on a promise or contract to make a distribution from Ziegler's estate; rather, it seeks to enforce a valid and existing written contract." He asserts that the written agreement "is a valid and existing contract that was to be partially performed before Ziegler's death (*i.e.*, the LaQues would provide the services . . .) and partially performed after Ziegler's death (*i.e.*, LaQue would receive title to Ziegler's residence as compensation for those services) . . . . Put a bit differently, the written contract was a present obligation to convey, not a future promise or agreement to make a distribution of Ziegler's estate."

In these respects, however, the Agreement was, once again, indistinguishable from a contract to make a will. A contract to make a will is "a valid and existing contract"; it could equally be said of a contract to make a will that it is a "present obligation" to execute a document, not a "future promise or agreement to make a distribution." Accordingly, these characteristics do not take the Agreement outside the scope of Code of Civil Procedure section 366.3. At oral argument, LaQue shifted ground slightly. He argued that upon Ziegler's death the house was transferred to him instantly, by operation of law; thus, it was no longer an asset of the estate, and he was not claiming a distribution from the estate. He likened the Agreement to a beneficiary designation on a bank or brokerage account.

The difference, however, is that the Agreement was a contract; normally, a beneficiary designation is not. Even though the Agreement was worded in the present tense, it required some further action by the Administrator (representing Ziegler) to make the transfer happen. The notion that the title was instantly transferred, although appealing, is a legal fiction; actually, the estate continued to hold the title.

The appropriate analogy would be that it was as if Ziegler had entered into a contract to make a beneficiary designation naming LaQue but had never actually made such a designation while he lived; it was left up to the Administrator either to perform the contract, by turning over estate assets, or to breach the contract. If he breached, then, as in this case, LaQue would be asserting a "claim that arises from a promise or agreement with a decedent to distribution from an estate" within the meaning of Code of Civil Procedure section 366.3.

Finally, if we had any doubt about the matter, we would be swayed by the Legislature's intent to promote uniformity and to foster "the policy in favor of the early closing and distribution of estates." (Sen. Com. on Judiciary, Analysis of Assem. Bill No. 1491, *supra*, at p. 12.)

We therefore conclude that LaQue's claim to the house is barred by Code of Civil Procedure section 366.3. LaQue also asserted a claim, in the

alternative, to the value of his services on a quantum meruit basis. ▮ That claim, however, is barred by Code of Civil Procedure section 366.2, which establishes a similar limitations period—i.e., one year from the date of death—for claims that could have been brought against a decedent had he or she lived. (See *Ferraro v. Camarlinghi, supra,* 161 Cal.App.4th at pp. 552–554; *Shewry v. Begil* (2005) 128 Cal.App.4th 639, 644 [27 Cal.Rptr.3d 209].) Accordingly, we will remand with directions to reject all of LaQue's claims.

## V

## DISPOSITION

The order appealed from is reversed. The trial court is directed to enter a new order rejecting LaQue's claims. Cox is awarded costs on appeal against LaQue.

Hollenhorst, Acting P. J., and McKinster, J., concurred.

A petition for a rehearing was denied September 27, 2010, and the petition of respondent Richard H. LaQue for review by the Supreme Court was denied November 17, 2010, S187252.